Marvin Ray YATES, Appellant,

v.

The STATE of Texas, State.

No. 2–98–144–CR.

Court of Appeals of Texas,
Fort Worth.

Aug. 26, 1999.

David A. Pearson, IV, Fort Worth, for
Appellant.

Tim Curry, District Attorney, Charles M. Mallin, Sylvia Mandel, and Kurt Stallings, Assistant Criminal District, Fort Worth, for Appellee.

Panel B: DAUPHINOT, RICHARDS, and HOLMAN, JJ.

## OPINION

DAVID L. RICHARDS, Justice.

Marvin Ray Yates appeals his conviction for felony DWI. He complains on appeal that: (1) the evidence was factually insufficient to support his conviction; and (2) the trial court erred in failing to grant a hearing on his motion for new trial, which raises the issue of ineffective assistance of trial counsel. We will affirm.

## FACTUAL SUFFICIENCY

■ A difficult question is presented by appellant's factual sufficiency complaint. When reviewing a factual sufficiency challenge, we bear the responsibility to review all of the evidence. *See Cain v. State,* 958 S.W.2d 404, 408 (Tex.Crim.App.1997); *see also Clewis v. State,* 922 S.W.2d 126, 129 (Tex.Crim.App.1996). In the instant case, a videotape of appellant taken following his arrest and introduced into evidence during trial was lost following the trial, due to no fault of appellant. We must determine whether reversal is required under this circumstance.

Under rule 34.6 of the Texas Rules of Appellate Procedure, a court should grant a new trial only when the lost or destroyed record is necessary in resolving the appeal:

An appellant is entitled to a new trial under the following circumstances:

(1) if the appellant has timely requested a reporter's record;

(2) if, without the appellant's fault, a significant exhibit or a significant portion of the court reporter's notes and records has been lost or destroyed or— if the proceedings were electronically recorded—a significant portion of the recording has been lost or destroyed or is inaudible;

(3) if the lost, destroyed, or inaudible portion of the reporter's record, or the lost or destroyed exhibit, *is necessary to the appeal's resolution;* and

(4) if the parties cannot agree on a complete reporter's record.

Tᴇx.R.Aᴘᴘ. P. 34.6(f) (emphasis added).

The Court of Criminal Appeals has recently provided guidance concerning the appropriate harm analysis to be conducted in this situation:

Rule 34.6(f)(3) specifies that a new trial may be granted only if the missing portion of the record "is necessary to the appeal's resolution." That provision is itself a harm analysis. If the missing portion of the record is not necessary to the appeal's resolution, then the loss of that portion of the record is harmless under the rule, and a new trial is not required. In enacting that provision of the rule, we necessarily rejected the contention that a missing record could never be found unnecessary to an appeal's resolution.

Further, that a kind of error may, in some (or even most) instances, result in inadequate data to determine whether harm has occurred is not sufficient justification for failing to conduct a harm analysis. Concerning the application of the harmless error standard found in former Tex.R.App. P. 81(b)(2) (now Rule 44.2), we held "appellate courts should not foreclose entire categories of error from harmless error review merely because such errors may *generally* resist a meaningful harmless error determination." *Cain v. State,* 947 S.W.2d 262, 264 (Tex.Crim.App.1997) (emphasis in original). We find that reasoning equally applicable to the present context. Although the lack of a record may in some cases deprive an appellate court of the ability to determine whether the absent portions are necessary to the appeal's resolution, an automatic rule of reversal is not justified.

*Issac v. State,* 989 S.W.2d 754, 757 (Tex. Crim.App.1999).

■ Because *Issac* provides that the determination of whether a missing portion of the record "is necessary to the appeal's resolution" is itself a harm analysis, it logically follows that a reviewing court must determine, in a factual sufficiency challenge, whether the missing evidence, together with the remaining record, might have convinced the reviewing court that the jury's verdict was so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *See Clewis,* 922 S.W.2d at 129. And, while appellant correctly notes that factual sufficiency challenges require consideration of all the evidence, we are mindful of our duty to reverse only where the record "as a whole" convinces us that the verdict shocks the conscience and is outweighed by contrary evidence. *See id.* at 135–36; *see also Cain v. State,* 958 S.W.2d at 408.

■ Under this standard, the effect of a lost exhibit on the analysis to be conducted in a factual sufficiency challenge must be measured in terms of the lost exhibit's relative significance to the particular element of the offense targeted in the complaint on appeal. For example, in a murder prosecution in which the defendant admitted killing the deceased, but claimed the killing occurred in self-defense, a reviewing court undertaking a factual sufficiency review might place small significance on the fact that an exhibit identified as the weapon used in the killing was lost following the trial. In contrast, a reviewing court might place great significance on the same lost weapon under other facts; for example, if there was conflicting testimony as to whether the lost exhibit was or was not a deadly weapon, as alleged in the indictment.

Our determination that the missing exhibit in the instant case is not necessary to the resolution of the present appeal rests primarily on two circumstances: (1) the uncontested testimony at trial indicated the video was taken a relatively long time following appellant's arrest; and (2) the State's concession at trial that appellant did not appear intoxicated on the video.

■ A review of the facts is required. Tarrant County Deputy Sheriff Ray Thornton was on routine patrol on the night of June 9, 1997 when he saw three vehicles traveling southbound on Interstate Highway 35 suddenly veer to the side of the highway, as if dodging something. Thinking that perhaps an object might have fallen off a vehicle onto the roadway, Thornton first looked to the road and highway shoulder. Seeing no debris, Thornton followed the cluster of vehicles. As he pulled alongside one of the vehicles, he saw the occupant turn on his overhead dome light and point to a blue Ford pickup truck at the front of the column. Thornton then saw the Ford suddenly veer sharply to the left, straddle the center spaced line, then veer sharply to the right so as to straddle the solid white line separating the right lane from the right shoulder. After seeing the Ford veer left and straddle the highway center spaced line again, Thornton activated his overhead lights and made the traffic stop. Appellant was the driver of the Ford. He responded to the overhead lights by slowing down, but not immediately stopping. Eventually, after passing several exits, he brought the Ford to a stop in the parking lot of a service station.

Appellant climbed out of the pick-up and began swaying. He then walked back toward Thornton's vehicle. Thornton described his gait as a "stagger" and "stumbling." As he drew near, Thornton smelled an odor of alcohol on his breath and on his clothes, as though he had spilled alcohol on himself. Thornton testified that he believed appellant was intoxicated.

Deputy Donald Duncan, a backup officer who arrived following the stop, performed the field sobriety tests. Duncan testified appellant appeared dazed and incoherent and "seemed like he didn't know what was going on." When asked to walk heel to toe

along a line, appellant's heel missed his toe by four to five inches on each step. When he was repeatedly unable to pass the one-legged stand test, Duncan stopped the test and performed a horizontal gaze nystagmus test. Both of appellant's eyes demonstrated nystagmus. Duncan testified he too believed appellant was intoxicated. Most significant to the circumstance of the lost videotape, Duncan testified, without contradiction, that the videotape was taken in the intoxilizer room approximately one hour and a half after appellant's arrest. Under cross-examination by defense counsel, Duncan admitted that by this time appellant was not swaying "very much" on the tape, was coherent, understood the instructions given to him, and did not appear unsteady on his feet. Duncan reiterated that the tape was made some ninety minutes following the arrest. Immediately before the State rested, testimony was presented regarding appellant's many prior convictions for the offense of driving while intoxicated. The defense presented no witnesses, but argued the State's theory of guilt was disproven by the tape. In response, the prosecutor argued:

> Now, [defense counsel] is understandably focused on about the only thing that can be pointed to, which is an hour and a half later after driving, an hour and a half after what matters, during which time he has talked to two different police officers. He has been in the back of a patrol car. He has been taken down to a station to be booked in during that time. Yeah, you bet he has kind of got himself sucked up just a little bit. And he hasn't been taking anything down the throat for a little while.

After careful review of the record, and under the harm analysis required by the Court of Criminal Appeals in *Issac*, we conclude review of the videotape is not "necessary" to this appeal's resolution. Under no circumstances would we, on these particular facts, find the jury's verdict "shocked the conscience," regardless of whether, an hour and a half following

his arrest, appellant appeared sober. This does not mean under different facts, we would not find reversal required where a videotape was lost following trial. For example, had the tape been made much closer in time to the arrest we would be unable to conduct a meaningful harm analysis without it and would deem the tape "necessary" to the issue presented. Finding no harm in the loss of the videotape, and finding no impropriety in the jury's verdict of guilt under the facts of this case, we overrule appellant's factual sufficiency complaint.

## MOTION FOR NEW TRIAL

In his remaining point, appellant complains of the trial court's failure to grant a hearing on his motion for new trial. He suggests two issues presented in his motion required that the trial court conduct a hearing: (1) the allegation that his pleas of true to the indictment's enhancement paragraphs were not voluntary; and (2) the allegation that his attorney provided ineffective assistance of counsel.

■ With respect to the first complaint we note the careful trial judge asked appellant detailed questions concerning the voluntary nature of his pleas prior to accepting them:

> (Enhancement Notice Paragraph One and Habitual Offender Notice Paragraph One read in open court).
>
> THE COURT:.... Now, Mr. Yates, to the enhancement notice in the Indictment, you may plead true or not true; what is your plea?
>
> [APPELLANT]: True.
>
> THE COURT: All right. Very well. And in the Habitual Offender Notice, you may plead true or not true; what is your plea?
>
> [APPELLANT]: True.
>
> THE COURT: Are you pleading true because it is true?
>
> [APPELLANT]: Yes, sir, it is true.

THE COURT: Anybody offer any hope of pardon or parole to get you to plead true?

[APPELLANT]: No sir.

THE COURT: Anybody tell you they were going to harm you if you didn't plead true?

[APPELLANT]: Not at this time, no, sir, they haven't.

THE COURT: All right. Very well. You know by pleading true I'm going to find that it is, in fact, true. Do you understand that?

[APPELLANT]: Yes, sir.

THE COURT: All right. Then I will make a finding that the enhancement notice is, in fact, true and that the habitual notice is, in fact, true and I will ask your lawyer, Ms. Simmons, if you feel that your client is competent to make these true answers to the enhancement and the habitual notice?

MS. SIMMONS: Yes, I do, Your Honor.

Review of the letter appellate counsel attached to his motion for new trial does not raise the voluntariness issue presented in the motion. Although appellant twice states in his letter that he was unaware that his pleas of true would be "used to find me guilty," at no point in the letter does appellant state that the enhancement paragraphs were "not" true. Nevertheless, his written motion alleges that "[t]he Defendant now says the enhancements were not true and that he never intended to say that the enhancement paragraphs were true." This discrepancy is significant because the only affidavit offered in support of the motion for new trial was that of appellate counsel. The affidavit states that counsel does not "swear from my own personal knowledge that the allegations are true and correct." The "allegations" referred to in the affidavit were those made in an unsworn two page letter written by appellant. As previously noted, appellant did not contend in the letter that the enhancement paragraphs were not

true, only that they were the result of plea bargain agreements. Under such circumstances, the trial court could have properly deemed the issue as not requiring an evidentiary hearing. Moreover, at another point in the letter appellant writes "all enhancement paragraphs were plea bargains for less time [sic] I was never proven guilty." It is apparent that appellant presently misunderstands the law and mistakenly believes that he had the option at trial of admitting his convictions in the cases alleged in the enhancement paragraphs and at the same time require the State to prove him guilty of those offenses, i.e., require the State to offer evidence in support of the formerly prosecuted cases showing appellant's guilt in those offenses.

■ Similar misunderstandings undercut appellant's claim that a hearing was required on the question of whether he received effective assistance of counsel.

Most of the letter attached in support of appellant's motion is a disjointed diatribe against trial counsel and the trial court, i.e., "Why did the [trial] judge let the trial proceed?"; "Why did [the assistant district attorney] ask me confusing questions about the enhancement paragraphs?"; and "Why didn't my lawyer investigate police records and have them produced?" In *Jordan v. State,* 883 S.W.2d 664, 665 (Tex. Crim.App.1994), the court held that where a defendant fails to specify what further investigation would have revealed, no error is shown in the denial of a hearing. Here, appellant's motion simply referenced appellant's letter and stated, "[t]he Defendant also alleges that he was denied a fair and impartial trial due to the ineffective assistance of counsel as guaranteed by the federal and state constitution." Nothing in the motion or attached letter suggested how further investigation would have been of benefit to his defense. For example, one complaint in the letter states, "attorney never gathered any physical evidence to present, i.e. medical records, AA records, parole hearing tapes." No suggestion is made as to what these records

would have revealed or how they could have resulted in a different verdict. Under these circumstances no abuse of discretion is shown.

The trial court's judgment and sentence are affirmed.