**Louis John GAVREL, Appellant,**

v.

**José E. RODRIGUEZ, M.D. and Grant R. McKeever, M.D. P.A., Appellees.**

No. 14–04–00637–CV.

Court of Appeals of Texas, Houston (14th Dist.).

May 3, 2007.

Thomas Charles Graham, David Berg, Fernando De Leon Jr., Gary M. Polland, Joel M. Androphy, Mark Alan Evetts, Houston, for appellant.

Michael Anthony Descioli, Trace Jeffrey Sherer, Houston, for appellees.

Panel consists of Chief Justice HEDGES and Justices HUDSON and GUZMAN.

## OPINION

ADELE HEDGES, Chief Justice.

Appellant, Louis John Gavrel, appeals a medical malpractice judgment entered in favor of appellees, José Rodriguez and Grant McKeever. In six issues, appellant argues that the evidence is factually insufficient to support the jury's verdict and that he is entitled to a new trial due to an incomplete reporter's record. We reverse and remand for a new trial.

## I. BACKGROUND

On the evening of February 17, 2000, Dr. Grant McKeever received a phone call from Dr. Ralph Hertz, Mr. Gavrel's family physician. Dr. Hertz asked Dr. McKeever to meet Mr. Gavrel in the emergency room because Mr. Gavrel was suffering from severe low back pain. X-rays of Mr. Gavrel's back revealed that titanium cages placed earlier in his back had begun to move. Because Dr. McKeever did not regularly treat patients with back cages, he called Dr. José Rodriguez. Dr. Rodriguez determined that Mr. Gavrel's pain and muscle weakness were caused by movement of the back cages. Dr. Rodriguez testified that Mr. Gavrel needed surgical correction of the back cage positions to prevent a potential severing of the spinal cord. Dr. Rodriguez noted that Mr. Gavrel had "borderline" high blood pressure, for which medication had been prescribed. Pre-operative blood tests revealed that Mr. Gavrel had elevated blood sugar levels. Dr. Rodriguez asked Mr. Gavrel if he were taking diabetes medication. Mr. Gavrel initially denied that he had diabetes, but eventually admitted to "some degree of diabetes." On February 23, 2000, Dr. Rodriguez performed surgery on Mr. Gavrel's back. Dr. McKeever assisted Dr. Rodriguez, and Dr. David Warrington administered anesthesia. When Mr. Gavrel awoke from surgery, it was discovered that he had suffered a stroke.

Mr. Gavrel subsequently sued Drs. Warrington, Rodriguez, and McKeever for negligence. Mr. Gavrel alleged that his blood pressure was not properly monitored during surgery, causing him to suffer a stroke. He further alleged that Drs. Rodriguez and McKeever were negligent in

proceeding to surgery without obtaining consultations from internists. On October 8, 2002, Mr. Gavrel agreed to non-suit Dr. Warrington. After a jury trial, the jury found that the negligence, if any, of Drs. Rodriguez and McKeever did not proximately cause Mr. Gavrel's injury.

## II. INACCURACIES IN THE REPORTER'S RECORD

Appellant filed a motion for new trial in this court pursuant to Texas Rule of Appellate Procedure 34.6(f) based on his allegation that the substitute court reporter's certification of the final volume of the reporter's record is not credible and that the trial court's subsequent corrections to the record were not authorized by any rule of trial or appellate procedure.

The trial in this case lasted three days. Most of the testimony was transcribed by the trial court's regular court reporter, and that portion of the record was timely filed. Cynthia Torres–Miles, a substitute court reporter, transcribed the third and final day of testimony. After several extensions of time, Ms. Miles filed the final volume of the reporter's record on February 9, 2005. Upon review, appellant's counsel found the volume to be inaccurate and filed a motion in this court to have the reporter's record corrected. Rule 34.6(e)(3) sets out the procedure to be followed when a party challenges the accuracy of the reporter's record after it has been filed in the appellate court. *See* TEX.R.APP. P. 34.6(e)(3). The rule provides:

(e) **Inaccuracies in the Reporter's Record.**

(1) Correction of Inaccuracies by Agreement. The parties may agree to correct an inaccuracy in the reporter's record, including an exhibit, without the court reporter's recertification.

(2) Correction of Inaccuracies by Trial Court. If the parties cannot agree on whether or how to correct the reporter's record so that the text accurately discloses what occurred in the trial court and the exhibits are accurate, the trial court must-after notice and hearing-settle the dispute. If the court finds any inaccuracy, it must order the court reporter to conform the reporter's record (including text and any exhibits) to what occurred in the trial court, and to certify and file in the appellate court.

(3) Correction After Filing in Appellate Court. If the dispute arises after the reporter's record has been filed in the appellate court, that court may submit the dispute to the trial court for resolution. The trial court must then proceed as under subparagraph(e)(2).

On February 24, 2005, this court abated the appeal, ordered the parties to attempt to resolve the dispute, and if no agreement was possible, referred the dispute to the trial court for resolution. On March 24, 2005, the court reporter notified this court that she was confident that (1) her transcription of the record is accurate, and (2) no changes would be made unless further orders issued. On April 21, 2005, this court ordered the parties to attempt to agree on corrections to the record. On May 20, 2005, appellant informed the court that although the parties agreed that errors existed in the final volume of the reporter's record, they could not agree to correct the reporter's record. Both parties requested a hearing in the trial court to resolve the dispute.

On June 9, 2005, we ordered the trial court to conduct a hearing to resolve the dispute over the accuracy of volume 4 of the reporter's record in accordance with the procedure set forth in Rule 34.6(e)(2). A record of a hearing held in the trial court on September 7, 2005, was filed in this court on January 11, 2006. On February 7, 2006, a supplemental clerk's record

containing the trial court's order signed October 24, 2005, was filed in this court. The trial court's order itemized twelve corrections to the February 16, 2004, reporter's record. The trial court recited that "[w]ith these corrections, the transcript of the Court reporter, Cynthia Torres–Miles for trial in the referenced cause on February 16, 2004, is certified." The trial court did not strictly comply with Rule 34.6(e)(2) in that it did not order the court reporter to conform the reporter's record to what occurred in the trial court; rather it undertook that task itself. In an order dated February 16, 2006, this court found good cause to suspend the operation of the rule under Rule 2, and accepted the trial court's corrections to the reporter's record. *See* TEX.R.APP. P. 2.

### III. LOST OR DESTROYED RECORD

■ On appeal, appellant contends that he is entitled to a new trial because even with the trial court's corrections, a significant portion of the court reporter's notes and records has been lost or destroyed. In addressing this issue, we apply the following analysis as prescribed by the Rules of Appellate Procedure:

(f) **Reporter's Record Lost or Destroyed.** An appellant is entitled to a new trial under the following circumstances:

(1) if the appellant has timely requested a reporter's record;

(2) if, without the appellant's fault, a significant exhibit or a significant portion of the court reporter's notes and records has been lost or destroyed or— if the proceedings were electronically recorded—a significant portion of the recording has been lost or destroyed or is inaudible;

(3) if the lost, destroyed, or inaudible portion of the reporter's record, or the lost or destroyed exhibit, is necessary to the appeal's resolution; and

(4) if the lost, destroyed or inaudible portion of the reporter's record cannot be replaced by agreement of the parties, or the lost or destroyed exhibit cannot be replaced either by agreement of the parties or with a copy determined by the trial court to accurately duplicate with reasonable certainty the original exhibit.

TEX.R.APP. P. 34.6(f).

■ There is no dispute that the record is inaccurate and that appellant is not at fault. It is also clear that the parties cannot agree on a record. Rule 34.6(f)(3) specifies that a new trial may be granted only if the missing portion of the record is necessary to the appeal's resolution. "That provision is itself a harm analysis." *Issac v. State*, 989 S.W.2d 754, 757 (Tex. Crim.App.1999). If the missing portion of the record is not necessary to the appeal's resolution, then the loss of that portion of the record is harmless under the rule and a new trial is not required. *Id.*

At the hearing ordered by this court, the court reporter stated that she had taken the third day of trial and filed the final volume of the reporter's record. She admitted to the court that she had difficulty transcribing the testimony because her tape recorder malfunctioned. The court reporter also admitted that her stenographic notes contained mis-strokes and "some drops" that could not be reconstructed without the audiotape of the testimony. In answer to the court's questions as to why she could not prepare an accurate record without the audiotapes, the reporter answered that the "transcript was of technical difficulty that was a little bit hard to take down. And I think it was a little bit more difficult to take this certain expert down."

## A. Significant Portions of the Record Have Been Lost or Destroyed.

Appellant contends that the inaccuracies in the record lead to the inevitable conclusion that portions of the testimony are missing. Appellant points to the following portions of Dr. Barlow's testimony in which there are obvious gaps:

Q. You've testified that if a surgeon were to want to see a monitor, a blood pressure monitor—let me back up a moment. Let me ask you about consultation in general. Tell me again when you seek a consultation. Is it strictly to get further testing?

A. Testing is one of the things. That's an anesthesiologist—I can't do—that is an area where I would ask for a consult to give me help in that area. Yes, that would be one reason.

\* \* \* \* \* \*

Q. Now, which is true? Is it-now, which is true, deep sleep—

A. Deep sleep—by the definition you can be asleep and have your body functions going along and still be aroused, maybe. But sometimes in anesthesia sleep, assuming that you're going to wake up—

Q. Excuse me for my ignorance, but if it is, in fact, a greater risk of stroke—Dr. Rodriguez' deep sleep is typical of people with hypertension, people with diabetes, if that is the case, wouldn't it be—it's indicated to put an end to the surgery until his conditions were under control?

\* \* \* \* \* \*

Q. Depending on the natural course of events, if the cause is prolonged blood pressure, if that is the condition, it moves through the body and ends in a piece of plaque or some sort of clot being—

A. Just on changing blood pressure. That is, nothing being moved at the site of the body if—

Q. Forgive me, there is a direct relationship between prolonged and-you told me that prolonged can cause a stroke?

\* \* \* \* \* \*

Q. General anesthetic as a particular parameter for the blood pressure—

A. He doesn't mind keeping the blood pressure—he is thinking about where he would like to keep blood pressures during the cases, looking at those when he is doing anesthetic.

Appellant further points to several instances during closing argument where significant portions of the record clearly appear to have been omitted.

Appellees contend that appellant has not met his burden to show any significant portion of the record's having been lost or destroyed. The court reporter admitted that there were mis-strokes and "drops" in her notes and that she could not re-create the testimony without an audiotape. Because the court reporter delayed at least one year in preparing the record, neither she, nor the parties, could state with certainty that the testimony of Dr. Barlow was complete. The disjointed nature of the recorded testimony, coupled with the court reporter's admission that her notes were not complete, leads to the inevitable conclusion that portions of the reporter's record are missing. Appellant could not reasonably be expected to show exactly what testimony is missing. *See Owens–Illinois, Inc. v. Chatham*, 899 S.W.2d 722, 735 (Tex.App.-Houston [14th Dist.] 1995, writ dism'd) ("It would be like asking someone to read *War and Peace* and, months later, showing the individual several retyped pages from the middle of the book and asking them to determine whether there were any changes on any of the pages.").

**B. The Lost or Destroyed Portions of the Record are Necessary to Resolution of the Appeal.**

■ Appellees further contend that appellant has failed to show that the lost or inaudible portions of the record would convince the reviewing court that the jury's verdict is against the great weight and preponderance of the evidence. The question, however, is not whether this court can be convinced by the missing testimony to reverse the trial court's judgment, but whether that testimony is necessary to the resolution of the appeal.

■ In complaints about factual insufficiency of the evidence, the appellant's burden cannot be discharged in the absence of a complete or an agreed reporter's record. *Englander Co. v. Kennedy,* 428 S.W.2d 806, 807 (Tex.1968). The "appeal's resolution" encompasses both affirmance and reversal of the trial court's judgment. Without a complete record, it is impossible to review all the evidence presented to the jury or to apply the appropriate evidentiary sufficiency standard of review. In reviewing a factual sufficiency point, the court of appeals must weigh *all* of the evidence in the record. *Ortiz v. Jones,* 917 S.W.2d 770, 772 (Tex.1996). Such a review necessarily includes evidence that is favorable to the jury's verdict. *Id.* Therefore, even if we were willing to presume that all of Dr. Barlow's testimony would have supported the jury's verdict, we are still obligated to review it. Without a complete, accurate reporter's record, we cannot do so. Such a review is fundamentally necessary to the resolution of the appeal.

Appellees rely on *Yates v. State,* 1 S.W.3d 277 (Tex.App.-Fort Worth 1999, pet. denied), in which the Fort Worth Court of Appeals found that a missing exhibit was not necessary to a factual sufficiency review. In *Yates,* the defendant was accused of driving while intoxicated and a videotape taken following his arrest was introduced into evidence, but was lost before it reached the appellate court. *Id.* at 278. In applying Rule 34.6(f)(3), the court found the missing videotape was not necessary to resolution of the appeal because the video was taken a relatively long time after the appellant's arrest, and the State conceded at trial that appellant did not appear intoxicated in the video. *Id.* at 279. *Yates* is distinguishable from this case in that here we do not have the benefit of knowing what portions of the record are missing. The trial court corrected twelve errors in the record, but the record reflects that the final volume of the reporter's record is not complete. Unlike the court in *Yates,* we cannot say with certainty that the missing testimony is not necessary to the resolution of the appeal.

**C. Untimely Request of the Record Does Not Preclude Reversal.**

Appellee further contends that appellant is not entitled to a new trial because he failed to timely request the record. Appellant admits that he did not request the record until one week after the deadline. However, even if appellant had filed a written request on the first day he was obligated to do so, such a request would not have prevented the inaccuracies in the record and the loss of a portion of the testimony. The court reporter admitted that she delayed in preparing the record because she did not have an audiotape of the proceedings and attempted to obtain the exhibits to aid in her preparation of the record. To hold appellant responsible for failing to request a reporter's record when, by all indications, such a request would not have prevented the loss of testimony is to elevate form over substance. *See In re G.M.S.,* 991 S.W.2d 923, 925 (Tex.App.-Fort Worth 1999, pet. denied)

(excusing late request of reporter's record when timely request would not have prevented loss of record).

## IV. CONCLUSION

We find a significant portion of the record, which is necessary to the appeal's resolution, has been lost through no fault of appellant. Accordingly, we reverse the judgment of the trial court and remand for a new trial.