

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00203-CV

**IN THE INTEREST OF L.A.V.**

From the 166th Judicial District Court, Bexar County, Texas
Trial Court No. 2018EM506059
Honorable Eric J. Rodriguez, Associate Judge Presiding

Opinion by:    Liza A. Rodriguez, Justice

Sitting:    Luz Elena D. Chapa, Justice
Irene Rios, Justice
Liza A. Rodriguez, Justice

Delivered and Filed: April 29, 2020

AFFIRMED IN PART, REVERSED AND REMANDED IN PART

Robert B.[1] appeals from the trial court's order establishing the parent-child relationship. In his pro se brief, he argues (1) the trial court erred in setting the amount of his child-support payments because it used his past income and did not consider that he was no longer employed and was receiving SSI benefits, and (2) the trial court erred in establishing parentage because neither L.A.V. nor L.A.V.'s mother submitted to DNA testing. We affirm in part, and reverse and remand in part.

---

[1]To protect the identity of the minor child, we refer to the parties by fictitious names, initials, or aliases. *See* TEX. FAM. CODE § 109.002(d).

**BACKGROUND**

The clerk's record reflects that on September 6, 2018, the Office of the Attorney General ("the OAG") filed a petition to establish the parent-child relationship and named Robert B. as the father of sixteen-year-old L.A.V. The clerk's record also reflects that Robert B. was served by substituted service as authorized by the trial court. On November 8, 2018, the trial court set a "final hearing on the merits of the parentage action or temporary orders, if appropriate," for January 30, 2019, "notif[ying] all parties that refusal to submit to testing as ordered above may result in the adjudication of paternity by the court at the above-scheduled hearing, and/or a finding of contempt, pursuant to Texas Family Code § 160.622." At the end of the order appears the signatures of the parties involved, including Robert B.'s signature.

On January 31, 2019, the trial court reset the "trial on the merits" for April 2, 2019. The trial court again notified the parties that "failure to appear may result in the issuance of a default order." The trial court ordered Robert B. "to appear before this court at the date and time stated above." Robert B.'s signature, however, is not found at the end of this reset order. The reporter's record of the April 2, 2019 trial reflects that Robert B. did not appear, and trial proceeded without him being present.

The only witness to testify was L.A.V.'s mother, Erika V. She testified that Robert B. is L.A.V.'s father and that there is no possibility of another man being his father. According to Erika V., L.A.V. resides primarily with her, and she has been responsible for making all the day-to-day decisions regarding his care. She explained that Robert B. had known about L.A.V. since L.A.V. "was really young." When asked about the last time Robert B. had seen L.A.V., Erika V. replied, "He's really never seen him." According to Erika V., Robert B. has spoken to L.A.V. on the phone and has messaged him in the past, but had never visited with L.A.V. in person.

With regard to Robert B.'s employment, Erika V. testified Robert B. was employed but she did not know where he was working or the amount of his income. Indeed, the only evidence relating to Robert B.'s income at trial appears to have been "State's Exhibit A," which the OAG described at trial as "an investigative review that was done by one of our child support officers." The reporter's record reflects that State's Exhibit A was admitted in evidence; however, it is not included in the reporter's record. The reporter's record reflects that at the end of trial, the trial court handed State's Exhibit A back to the attorney representing the OAG.

The Judge's Notes of the April 2, 2019 trial indicate that "default [was] granted on petition to establish [parent-child] relationship." On April 3, 2019, the trial court signed an order establishing the parent-child relationship. The trial court's order states that (1) it held a hearing on April 2, 2019; (2) L.A.V.'s mother appeared in person; and (3) Robert B., L.A.V.'s father, "although duly notified, did not appear." The trial court found that Robert B. "is the biological father of [L.A.V.]" and "ordered that the parent-child relationship is established" between Robert B. and L.A.V. The trial court appointed L.A.V.'s mother as managing conservator and Robert B. as possessory conservator. The trial court found that Robert B.'s gross monthly resources are $2,279.00 and that his net monthly resources are $1,919.34. The trial court ordered him to pay $283.00 each month in child support and ordered $10,188.00 in retroactive child support. On April 4, 2019, Robert B. filed his notice of appeal.

### ASSESSMENT OF CHILD SUPPORT

Robert B. first argues in his pro se brief that the trial court erred in assessing child support because the trial court considered his previous income and not his current income. He claims that before the date of the hearing, he informed "the child support officers" that he was unemployed and receiving SSI benefits. We review a trial court's order relating to child support for abuse of discretion. *Melton v. Toomey*, 350 S.W.3d 235, 238 (Tex. App.—San Antonio 2011, no pet.).

Although not independent grounds of error, legal and factual sufficiency are relevant factors in assessing whether the trial court abused its discretion. *Cruz v. Cruz*, No. 04-17-00594-CV, 2018 WL 6793847, at *4 (Tex. App.—San Antonio Dec. 27, 2018, no pet.) (mem. op.); *Newberry v. Bohn-Newberry*, 146 S.W.3d 233, 235 (Tex. App.—Houston [14th Dist.] 2004, no pet.).

In reviewing the appellate record, it appears the only evidence at trial relating to Robert B.'s income was State's Exhibit A, "an investigative review performed by one of the child support officers." However, as noted, State's Exhibit A is not included in the reporter's record, and the reporter's record reflects that it was given back to the attorney for the OAG at the end of trial. Further, the person who created this report was not called as a witness at trial. Thus, there is no other evidence in the record relating to this "investigative review" other than the exhibit itself. Because the reporter's record indicates State's Exhibit A was handed back to the attorney for the OAG, we ordered the OAG to deliver State's Exhibit A to the trial court clerk. *See* TEX. R. APP. P. 34.6(g) ("If someone other than the trial court clerk possesses an original exhibit, either the trial court or the appellate court may order that person to deliver the exhibit to the trial court clerk."). In response to our order, the OAG represented that it is no longer in possession of State's Exhibit A and has been unable to locate an electronic copy of it. Thus, the OAG concedes that State's Exhibit A cannot be located and is lost.

When "a significant exhibit" is lost "without the appellant's fault," "is necessary to the appeal's resolution," and "cannot be replaced by agreement of the parties or with a copy determined by the trial court to accurately duplicate with reasonable certainty the original exhibit," an appellant is "entitled to a new trial." *See* TEX. R. APP. P. 34.6(f). In this case, it is clear that State's Exhibit A was lost without fault of Robert B. *See id*. Normally when faced with a lost exhibit, we would order the trial court to conduct a hearing on whether the parties could replace the exhibit by agreement or with a copy determined by the trial court to accurately duplicate the

exhibit. *See id.* However, ordering the trial court to conduct a hearing on whether the parties could agree as to the substance of State's Exhibit A is futile in this case as Robert B. was not present for the hearing. Further, the OAG has already represented in its written response that it cannot locate a copy of State's Exhibit A. Therefore, we conclude that State's Exhibit A is lost and cannot be replaced. *See id.* Further, as there is no other evidence in the appellate record relating to Robert B.'s income, we conclude that State's Exhibit A is "necessary" to the resolution of Robert B.'s first issue.[2] *See id.* Accordingly, we hold Robert B. is entitled to a new trial on the issue of child support. *See id.*

### DETERMINATION OF PARENTAGE

In his second issue, Robert B. argues that the trial court erred in determining parentage because L.A.V. and Erika V. did not submit to DNA testing and no DNA testing was performed. The clerk's record reflects that the trial court ordered Robert B., L.A.V., and Erika V. to submit to DNA testing. At the hearing, Erika V. testified she was certain that Robert B. was L.A.V.'s father and that there was no possibility that anyone else was the father. When asked about the DNA testing, Erika V. testified Robert B. asked for DNA testing but did not appear for the testing. Given this evidence that Robert B. did not appear for DNA testing, we find no error by the trial court in determining Robert B. is L.A.V.'s father. *See* TEX. FAM. CODE ANN. § 160.622(b) ("A court may adjudicate parentage contrary to the position of an individual whose paternity is being determined

---

[2]We note that Rule 34.6(f) also provides that an appellant should have timely requested a reporter's record. *See* TEX. R. APP. P. 34.6(f). However, an appellant's failure to timely request the record does not preclude his right to a new trial under all circumstances. For example, in *Gavrel v. Rodriguez*, 225 S.W.3d 758, 763 (Tex. App.—Houston [14th Dist.] 2007, pet. denied), the court of appeals determined that a significant portion of the record necessary to the appeal's resolution had been lost through no fault of appellant. The court held that the appellant's failure to timely request the record did not preclude his right to a new trial because, even if he had made a timely request, it would not have prevented the inaccuracies in the record. *Id.* Thus, the court reversed the judgment of the trial court and remanded the case for a new trial. *Id.* Similarly, here, Robert B.'s failure to timely request the record did not contribute to the State losing the exhibit in its possession. *See id.* Robert B. was not even present at the hearing in question and was thus unaware if a court reporter was taking a record. As stated in *Gavrel*, "[t]o hold appellant responsible for failing to request a reporter's record when, by all indications, such a request would not have prevented the loss of testimony is to elevate form over substance." *Id.*

on the grounds that the individual declines to submit to genetic testing as ordered by the court."). Thus, we affirm the trial court's order as it relates to establishing parentage between Robert B. and L.A.V.

## CONCLUSION

Because a significant exhibit necessary to the resolution of this appeal was lost through no fault of Robert B., we reverse in part the trial court's Order Establishing the Parent-Child Relationship and remand this cause for a new trial on the issue of child support. In all other respects, we affirm the trial court's order.

Liza A. Rodriguez, Justice