**VAST CONSTRUCTION, LLC, Appellant**

v.

**CTC CONTRACTORS, LLC, Appellee**

**NO. 14-16-00005-CV**

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed July 6, 2017

Andrew Bender, Murry B. Cohen, Houston, TX, for Appellant.

Jeffery T. Nobles, Chad Joseph Castille, Houston, TX, for Appellee.

Panel consists of Chief Justice Frost and Justices Brown and Jewell.

## OPINION

Kevin Jewell, Justice

In this contract dispute between a general contractor, CTC Contractors, LLC, and a subcontractor, Vast Construction, LLC, appellant Vast challenges the judgment in favor of appellee CTC. The judgment is based on a jury finding that Vast failed to comply with the subcontract. First, Vast asserts that it is entitled to either (1) rendition of judgment in its favor because it established as a matter of law that it did not breach the contract, or (2) reversal of the judgment and remand for a new trial based on various evidentiary or charge-error issues. Second, Vast contends that it established, as a matter of law, that CTC violated the prompt payment to contractors and subcontractors provisions of the Texas Property Code. Third, Vast urges that the trial court reversibly erred by refusing to include a jury question on its Texas Construction Trust Fund Act claim. Fourth, Vast asserts that the trial court erred in awarding attorneys' fees to CTC under Texas Civil Practice and Remedies Code Chapter 38. Finally, Vast asserts that it was entitled to attorneys' fees under the prompt-payment provisions of the Texas Property Code.

We agree with Vast that the trial court erred by awarding attorneys' fees against it under Civil Practice and Remedies Code section 38.001 because that statute authorizes an award of reasonable attorneys' fees against only individuals and corporations, and Vast, a limited liability company, is neither an individual nor a corporation. We therefore modify the trial court's judgment to remove all portions awarding attorneys' fees to CTC. Rejecting Vast's other issues that we find dispositive, we affirm the judgment as modified.

## Background

In December 2013, CTC became the general contractor for the construction of a Johnstone Supply store on property owned by Carroll Ventures, LLC in Houston, Texas. The construction site was located on the corner of North Shepherd Drive and Cornish Street. An integral part of the construction project was the expansion of Cornish Street to ease traffic flow and improve surrounding infrastructure (the "Cornish Street Project"). The Cornish Street Project included flood control measures, water and sewage work, installation of a fire sprinkler line, sidewalk construction, and widening of Cornish Street to allow truck access to the store.

CTC requested proposals to complete the Cornish Street Project. Vast submitted a written proposal to complete the Cornish Street Project for a total of $355,000. Vast's proposal covered furnishing "the equipment, labor[,] and materials needed to complete the scope of work listed." The proposal also excluded certain identified tasks, the most relevant of which for our purposes is "permits."

CTC and Vast signed a subcontractor agreement in February 2014 (the "Subcontract"). The scope of work attached to the Subcontract described the work to be completed on site as "concrete and asphalt paving, water, sewer[,] and storm sewer." This scope of work was to be completed by April 10, 2014. The Subcontract further included the following relevant provisions:

> All work order additions and or omissions must be approved by Contractor. Subcontractor will accept all financial

responsibility for any work performed by Subcontractor that is not covered in this agreement or that is not approved by Contractor.

\* \* \*

Subcontractor is required to meet all reasonable completion schedules set forth by the Contractor[;] therefore Subcontractor agrees to supply as many workers as need, or work as many hours as needed, to meet these completion schedules as well.

\* \* \*

CANCELLATION/TERMINATION. In the event that the "Scope of Work" is canceled[,] Subcontractor will be compensated for any work completed based on the breakdown of its bid. If the work completed is not covered in Subcontractor's bid then Contractor reserves the right to compensate Subcontractor based on a percentage scale of work completed up to the cancellation date. Contractor reserves the right to terminate this agreement at any date, with no further compensation, if Contractor determines that Subcontractor is not performing its obligations to fully meet this agreement, also Subcontractor agrees to reimburse Contractor for all cost[s] incurred by Contractor due to Subcontractor negligence.

\* \* \*

REMEDIES. In addition to any and all other rights a party may have available according to law, if a party defaults by failing to substantially perform any provision, term or condition of this Contract (including without limitation the failure to make a monetary payment when due),

the other party may terminate the Contract by providing written notice to the defaulting party. This notice shall describe with sufficient detail the nature of the default. The party receiving such notice shall have 10 working days from the effective date of such notice to cure the default(s). Unless waived by the party providing notice, the failure to cure the default(s) within such time period shall result in the automatic termination of this Contract.

ENTIRE AGREEMENT. This Contract contains the entire agreement of the parties, and there are no other promises or conditions in any other agreement whether oral or written concerning the subject matter of this Contract. This Contract supersedes any prior or written or oral agreement between the parties.

The Subcontract was silent concerning which party was obligated to secure permits necessary to complete the scope of work. However, Vast applied for and obtained an excavation permit, a sidewalk impairment permit, and a storm water line system permit from the City of Houston. One other permit—a lane closure permit—also was critical to completing the Cornish Street Project. Vast began processing the lane closure permit with the City around February 18, 2014. Securing the permit required a traffic control plan, which the City of Houston had approved in November of 2013.[1] Although the City initially denied the lane closure permit,[2] the City, CTC, and CSF personnel continued to communicate about adjusting the traffic control plan to secure approval.

1. An engineering firm, CSF Engineers, drafted the traffic control plan.

2. It is unclear from our record precisely why the City denied the lane closure permit when the City previously approved the traffic con-

trol plan. However, it appears that the traffic control plan ultimately was deemed to be "unrealistic" for the traffic conditions as they existed when the lane closure permit application was submitted.

Vast submitted a bill to CTC on February 19 for $38,400 for "mobilization costs." CTC submitted a payment application that included this invoice (among others) to Carroll Ventures for payment on February 25. CTC received Carroll Ventures's payment on this application on March 14, but CTC did not remit any funds to Vast.

Meanwhile, Vast began "pulling people off" the Cornish Street Project in late February. On March 13, 2014, while discussions still were underway among the City, CTC, and CSF regarding the lane closure permit, Vast contacted the City of Houston and cancelled its maintenance bond and all the permits it had obtained previously. All work on the Cornish Street Project came to a halt that day.

Vast's work stoppage is undisputed in the record. CTC's president, Josh Crescenzi, testified that Vast abandoned work on the Cornish Street Project because Vast desired to pursue more profitable endeavors. The record does not indicate that Vast contended it abandoned the project because CTC was in breach. And, there is no evidence that Vast invoked the Subcontract's notice-of-default and termination procedures before Vast stopped work on the project on March 13.

On March 23, CTC notified Vast that Vast was in default on the Subcontract for Vast's alleged: (1) failure to prosecute work on the Cornish Street Project in accordance with the Subcontract documents and schedule; (2) failure to strictly comply with all provisions of the Subcontract; and (3) delay, interference, or stoppage of CTC's operations or of any other subcontractor work.

CTC requested bids from replacement subcontractors for the Cornish Street Project shortly after Vast. revoked the permits. After receiving multiple proposals, CTC selected A&M Contractors to finish the Cornish Street Project and entered into a contract with A&M on April 1, for a total cost of $446,900. CTC's contract with A&M expressly provided that A&M was responsible for obtaining the necessary permits. The contract also required A&M to obtain a performance bond, which Vast had not been required to obtain.

On April 14, Vast notified CTC that CTC was in default for CTC's failure to secure required permits necessary for Vast to commence work; failure to timely provide plans; failure to secure approval of a traffic detour plan; failure to pay Vast's February invoice; and refusal to hold necessary performance meetings. In the notice, Vast alleged that it had "attempted to assist CTC" by: (1) securing permits it was not obligated to secure because of CTC's inability to obtain them; (2) sending workers to mobilize and prepare the site at CTC's request; (3) working at the site for two weeks at CTC's request; (4) providing CTC sufficient time to acquire approval of the traffic control plan, which CTC was unable to accomplish; (5) negotiating with CenterPoint Energy regarding relocation of electrical poles, which Vast was not obligated to do; and (6) offering to meet with CTC to negotiate timeline changes that "had become necessary due to delays caused by CTC."

On April 17, 2014, CTC sued Vast for breach of contract, seeking the difference between Vast's Subcontract amount and the amount CTC paid to have the Cornish Street Project completed. CTC paid A&M approximately $477,000, and paid other subcontractors over $60,000, to complete the Cornish Street Project. CTC alleged that Vast failed to timely prosecute its work, failed to strictly comply with the Subcontract, "delayed, interfered and/or stopped CTC's operations," and "abandoned the project." CTC asserted that Vast had a contractual duty to obtain, but failed to obtain, all necessary building per-

mits and then revoked those permits it had secured. CTC alleged that Vast's conduct caused all construction activities to stop until the permits could be reissued. CTC also sought attorneys' fees under Civil Practice and Remedies Code Chapter 38. In response, Vast denied liability and asserted counterclaims for breach of contract, declaratory relief, and violations of the prompt payment to contractors and subcontractors provisions of the Texas Property Code[3] and the Texas Construction Trust Fund Act.[4]

During the jury trial, CTC's Crescenzi, testified that Vast was required to secure permits. Crescenzi also testified that Vast never objected to obtaining permits. Based on Crescenzi's testimony and the fact that Vast's original proposal expressly excluded permits from the scope of its bid, Vast offered its proposal into evidence on several occasions. CTC opposed admission based on the parol evidence rule and the merger clause (the "entire agreement" clause excerpted above) contained in the Subcontract. In response, Vast asserted two grounds for admission: (1) to impeach Crescenzi, and (2) because CTC had opened the door to the proposal's admission. The trial court denied Vast's requests to challenge Crescenzi with the proposal or otherwise introduce the proposal into evidence. Both parties presented expert evidence of industry custom and standards as to whether a subcontractor, like Vast, or a general contractor, like CTC, was responsible for obtaining permits. Despite the focus on permitting, however, it was undisputed that Vast abandoned the Cornish Street Project. Crescenzi detailed Vast's decision to pull off the job and cancel permits and bonds; Vast's president, Creig Cox, acknowledged that Vast had left the project entirely by mid-March.

The jury charge included separate broad-form questions on whether Vast or CTC failed to comply with the Subcontract, along with related questions on excuse and damages, respectively, as to each party. During the charge conference, Vast requested an instruction on materiality of its alleged breaches, as well as a question on its Trust Fund Act claim. The trial court refused both requests. The jury found that Vast failed to comply with the Subcontract and awarded CTC $91,900 in actual damages. The jury also found that CTC did not breach the Subcontract, a finding Vast does not challenge on appeal. The trial court signed a judgment in favor of CTC in which it awarded CTC the damages as found by the jury and awarded CTC $190,000 in attorneys' fees for trial, as well as conditional appellate attorneys' fees. The trial court denied Vast's motion for judgment notwithstanding the verdict. This appeal timely followed.

## Issues Presented

Vast's first issue includes several arguments. Vast contends that: (a) Vast established as a matter of law that it was not required to obtain permits, and thus, Vast did not breach the contract; (b) the trial court erred in excluding Vast's bid proposal in light of Crescenzi's testimony that Vast never informed CTC that Vast was not required to obtain permits; (c) the trial court erred in refusing to instruct the jury on materiality; and (d) the damages awarded are not supported by legally or factually sufficient evidence. In issue two, Vast asserts that it established as a matter of law that it was entitled to recover on its claim under the prompt payment to contractors and subcontractors provisions of the Texas Property Code (the "prompt-payment pro-

---

**3.** Tex. Prop. Code §§ 28.001-28.010.

**4.** *Id.* §§ 162.001-162.033.

visions"). Vast asserts that the trial court erred in denying its requested question on its Texas Construction Trust Fund Act claim in its third issue. In its fourth issue, Vast urges that the trial court erred in awarding attorneys' fees to CTC under section 38.001 of the Texas Civil Practice and Remedies Code. Finally, in issue five, Vast argues it is entitled to attorneys' fees under the prompt-payment provisions. We address each of these issues in turn.

## Analysis

### A. Breach of Contract Claim

Vast first challenges the jury's finding in Question 1 that it failed to comply with the Subcontract. Focusing on the Subcontract's silence as to the burden to obtain permits, Vast contends that it established, as a matter of law, that it did not breach the Subcontract because the Subcontract did not require Vast to obtain permits.[5] Thus, Vast requests the court to reverse and render judgment in Vast's favor on CTC's breach of contract claim.

#### 1. *Standard of Review*

■ Vast does not articulate a standard of review in its brief, but its challenge to Question 1 touches two distinct elements of a breach of contract claim: a valid contractual duty and breach of that duty.[6] An analysis of each element potentially implicates two separate standards of review. Generally, a court determines what conduct is required by the parties—i.e., what duties exist under a contract. *See,*

e.g., *Meek v. Bishop Peterson & Sharp, P.C.*, 919 S.W.2d 805, 808 (Tex. App.—Houston [14th Dist.] 1996, writ denied). But, insofar as a dispute exists concerning the failure of a party to perform a contract, the court submits the disputed fact questions to the fact finder. *See id.* Thus, the issue of whether a contract imposes a particular duty on a party is most often a legal question we review de novo,[7] while whether a party has failed to perform under the contract is a factual matter that we review under traditional evidentiary sufficiency standards. *Trinity Materials, Inc. v. Sansom*, No. 03-11-00483-CV, 2014 WL 7464023, at *10 (Tex. App.—Austin Dec. 31, 2014, pet. denied) (mem. op.) (explaining that conduct required by parties under a contract is a legal question and any dispute concerning failure of party to comply with contact is a fact question for the jury).

■ Vast's core argument is that it cannot be held liable for failing to comply with the Subcontract because it had no contractual duty to obtain permits as a matter of law, thus negating the required element of duty. Ultimately, whether we evaluate Vast's argument under a de novo standard or an evidentiary sufficiency standard is not outcome determinative. As explained below, we need not evaluate de novo whether the Subcontract imposed a duty on Vast to secure permits for the Cornish Street Project. Assuming Vast had no duty to secure the permits, as Vast contends,

---

5. Vast alternatively contends that its pre-agreement proposal, which excluded permits from the scope of work on which it bid, was incorporated into the Subcontract. Thus, Vast argues, the Subcontract's express terms imposed no obligation on Vast to secure permits. We need not address this alternative argument due to our disposition of the case.

6. To recover for breach of contract, CTC was required to prove the following elements: (1)

a valid contract; (2) CTC tendered performance or was excused from doing so; (3) Vast breached the terms of the contract; and (4) CTC sustained damages as a result of Vast's breach. *See West v. Triple B Servs., LLP*, 264 S.W.3d 440, 446 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

7. *El Paso Nat. Gas Co. v. Minco Oil & Gas, Inc.*, 8 S.W.3d 309, 312 (Tex. 1999).

the Subcontract clearly imposed other duties, including the duty to perform the tasks even Vast agrees were included in the Subcontract's scope of work. And, Question 1 did not ask the jury whether Vast failed to comply with the Subcontract by not obtaining permits; rather, Question 1 simply asked the jury whether Vast failed to comply with the Subcontract. And, Vast has not argued that Question 1, as worded, was erroneous; thus, the charge as submitted governs this case through appeal. *See Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387, 393-94 (Tex. 1997). Accordingly, we evaluate only whether legally sufficient evidence exists to support the jury's affirmative answer to Question 1 on any valid basis. *See In re A.V.*, 113 S.W.3d 355, 362-63 (Tex. 2003).

 When reviewing the legal sufficiency of the evidence, we view the evidence in the light most favorable to the judgment and indulge every reasonable inference that would support it. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *Id.* at 807, 827; *St. Germain v. St. Germain*, No. 14-14-00341-CV, 2015 WL 4930588, at *2 (Tex. App.—Houston [14th Dist.] Aug. 18, 2015, no pet.) (mem. op.). If there is more than a scintilla of evidence to support the judgment, we must uphold it. *Coffman v. Melton*, 448 S.W.3d 68, 71 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). More than a scintilla of evidence exists when the evidence supporting the finding rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id.*

 We sustain a legal sufficiency or "no evidence" challenge only when: (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact. *Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003). We apply this standard mindful that the jury is the sole judge of the credibility of the witnesses and the weight to be given to their testimony, and we indulge every reasonable inference in support of the jury's findings. *See City of Keller*, 168 S.W.3d at 819, 822.

As there exists more than a scintilla of evidence that Vast breached a duty under the Subcontract by abandoning the project, we conclude the jury's affirmative finding as to Question 1 is supported by legally sufficient evidence.

### 2. *Application*

 Vast's argument in support of its first issue presupposes that the only way in which the jury could have found Vast breached the Subcontract was by failing to secure the permits. As noted above, Question 1 was not so limited; instead, the jury was asked, in a broad-form submission, whether Vast failed to comply with the Subcontract. No limiting instructions accompanied the question, and the jury answered "yes." Given the wording of the question, the jury could have found a failure to comply with the Subcontract based on the failure to perform any obligation contained in the agreement and supported by legally sufficient evidence, including, as CTC argued, Vast's abandonment of the project. *See Trinity Materials*, 2014 WL 7464023, at *4 (affirming judgment based on jury's affirmative finding to broad-form breach of contract question when party could have breached contract in multiple ways, at least one of which was supported by legally and factually sufficient evidence); *Eco Built, Inc. v. Lulfs*, No. 03-08-

00427-CV, 2010 WL 3629821, at *9 (Tex. App.—Austin Sept. 17, 2010, no pet.) (mem. op.) (holding that broad-form submission of breach question allowed jury to find breach based on any contractual obligation); *see also Wheelbarger v. Landing Council of Co-Owners*, 471 S.W.3d 875, 888 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (upholding breach of contract finding when legally sufficient evidence supported one of multiple alleged breaches); *Alamo Cmty. College Dist. v. Browning Constr. Co.*, 131 S.W.3d 146, 164-65 (Tex. App.—San Antonio 2004, pet. denied) (same). It is not necessary for us to discern the specific factual basis for the jury's finding, as we may uphold the finding if we conclude that legally sufficient evidence supports any breach alleged by CTC. *See Trinity Materials*, 2014 WL 7464023, at *4; *see also Thomas v. Oldham*, 895 S.W.2d 352, 360 (Tex. 1995) (defendant who did not ask for separate damage findings could only challenge sufficiency of the evidence supporting the whole verdict); *Tex. Dep't of Human Servs. v. E.B.*, 802 S.W.2d 647, 649 (Tex. 1990) (trial court not required to ask jury to specify ground on which it relied to answer question in jury charge); *Wackenhut Corrs. Corp. v. de la Rosa*, 305 S.W.3d 594, 622 (Tex. App.—Corpus Christi-Edinburg 2009, no pet.) (failure to object to form of jury questions limited appellate review to whether any of plaintiff's theories were supported by sufficient evidence), *abrogated on other grounds by Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 157 (Tex. 2015).

The parties hotly contested who bore responsibility to obtain permits; indeed, the issue was a principal focus of the trial evidence. But permitting was not the only issue insofar as potential contractual breaches were concerned. The jury heard evidence that Vast abandoned the job before a dispute arose about the duty to obtain permits. CTC's Crescenzi testified that Creig Cox of Vast told Crescenzi that Vast wanted to pull off the Cornish Street Project because Vast desired to pursue "more profitable" projects. Crescenzi testified that from mid-February to mid-March, Vast and CTC developed and agreed on a plan for Vast to exit the project. In the interim, Vast was to transfer permits to CTC so that CTC could hire a new contractor to take over Vast's scope of work. But, according to Crescenzi, Vast "turned its back" on this plan, and instead pulled its performance bond and revoked the permits it had obtained. This prompted CTC's March 23, 2014 notice of default letter, in which CTC asserted Vast defaulted by its "delay, interference[,] and/or stoppage" of the project. And, when specifically asked how Vast breached its contractual obligations, Crescenzi's answer was not limited solely to a failure to obtain permits. He stated that Vast "walked off the project," canceled permits, and failed to respond to the default notice.

Notably, Vast's representatives did not dispute that Vast abandoned the Cornish Street Project. Cox acknowledged that Vast stopped work on the project in mid-to late-February. And Cox testified that, in mid-March, Vast "had other projects come up that we had already honored and had agreements to go do. And we were just asking, you know, let's just part ways." Indeed, according to Cox, Vast had a "justifiable reason to pull out of the job": it was unable to "get the traffic control plan." [8] Further, Vast's vice president, Josh Massengale, acknowledged that Vast

8. Question 2 asked the jury whether Vast's failure to comply with the Subcontract was "excused." The trial court instructed the jury that Vast's failure to comply was excused if Vast's compliance was waived or was impossible. The jury found Vast's breach was not excused and Vast has not challenged that finding on appeal.

notified the City in mid-March that it would no longer be on the job site or perform any work there. Finally, both Cox and Massengale admitted that, before leaving the Cornish Street Project, Vast did not follow the Subcontract's termination procedures, i.e., Vast did not notify CTC in writing that CTC was in default under the Subcontract for failing to obtain the lane closure permit and CTC had ten days to cure or Vast would terminate the Subcontract.

In sum, the testimony regarding Vast's abandonment of the project in mid-March 2014 constitutes more than a scintilla of evidence that Vast failed to comply with the Subcontract. *See, e.g., Walker & Assocs. Surveying, Inc. v. Roberts*, 306 S.W.3d 839, 856 (Tex. App.—Texarkana 2010, no pet.) ("It is undisputed that WAC did not complete the racetrack and that Walker ordered the Thackers to abandon the job. This would enable a reasonable and fair-minded jury to reach the conclusion that WAC breached the agreement."). Based on this undisputed evidence of Vast's abandonment, the jury's finding that Vast failed to comply with the Subcontract is supported by legally sufficient evidence.[9] *See Ho & Huang Props., L.P. v. Parkway Dental Assocs., P.A.*, No. 14-14-00528-CV, 529 S.W.3d 102, 119–120, 2017 WL 2268915, at *12-13 (Tex. App.—Houston [14th Dist.] May 24, 2017, no pet. h.) (concluding that legally sufficient evidence supported jury's finding in breach of contract case); *see also Trinity Materials*, 2014 WL 7464023, at *4-5.

Because there is sufficient evidence to support the jury's finding that Vast failed to comply with the Subcontract, we overrule that portion of Vast's first issue in which it challenges the jury's finding that it failed to comply with the Subcontract.

## B. Exclusion of Vast's Bid

Vast also asserts that a new trial is warranted because the trial court abused its discretion in excluding Vast's pre-agreement written proposal, which supported Vast's position that Vast was not responsible for obtaining the permits.

### 1. Standard of Review

We review a trial court's evidentiary ruling for abuse of discretion. *See K-Mart Corp. v. Honeycutt*, 24 S.W.3d 357, 360 (Tex. 2000) (per curiam). A trial court abuses its discretion if its decision is arbitrary, unreasonable, or without reference to guiding principles. *See id.* Additionally, to reverse a judgment based on a claimed error in excluding evidence, a party must show that the error probably resulted in an improper judgment. *Interstate Northborough P'ship v. State*, 66 S.W.3d 213, 220 (Tex. 2001); *see also* Tex. R. App. P. 44.1. Typically, a successful challenge to evidentiary rulings requires the complaining party to show that the judgment turns on that particular evidence. *See, e.g., Ford v. Premier Installation & Design Grp., Inc.*, No. 14-12-00610-CV, 2013 WL 4680513, at *15 (Tex. App.—Houston [14th Dist.] Aug. 29, 2013, no pet.) (mem. op.) (citing *Interstate Northborough P'ship*, 66 S.W.3d at 220).

### 2. Application

As discussed above, the jury's finding that Vast failed to comply with the Subcontract is supported by legally sufficient evidence that Vast abandoned the Cornish Street Project. This undisputed

---

9. Abandonment of a contract constitutes a breach. "A breach of contract occurs when a party fails or refuses to do something he has promised to do." *B & W Supply, Inc. v. Beckman*, 305 S.W.3d 10, 16 (Tex. App.—Houston [1st Dist.] 2009, pet. denied). We thus reject Vast's alternative argument in reply that "no rational jury could have [found a breach]" even if "Vast breached the Contract in a way other than permits."

evidence independently supports the jury's verdict regardless whether the Subcontract required Vast to obtain permits or whether the trial court correctly excluded the written proposal that expressly omitted permits from the scope of Vast's bid. Thus, assuming without deciding that the trial court abused its discretion in excluding Vast's written proposal, any error was harmless and did not, we think, "probably [cause] the rendition of an improper judgment." Tex. R. App. P. 44.1(a)(1). Given our conclusion with respect to Question 1, we cannot say that the judgment in this case "turned on" the permitting issue, to which Vast's written proposal related. *See Interstate Northborough P'ship*, 66 S.W.3d at 227 (concluding that any error in excluding certain evidence was harmless because "the State has not demonstrated that the trial court's judgment turns on the excluded evidence"); *Ford*, 2013 WL 4680513, at *15.

Thus, we overrule this portion of Vast's first issue.

## C. Vast's Requested Materiality Instruction

Vast additionally asserts in its first issue that the trial court erred in refusing Vast's proposed materiality instructions to accompany Question 1. Vast disputed whether its alleged breaches of the Subcontract were material; thus, Vast contends it was entitled to certain instructions listing factors for the jury to weigh in determining whether Vast failed to comply with a material term of the Subcontract.

### 1. Standard of Review

■ "Determining necessary and proper jury instructions is a matter within the trial court's discretion, and appellate review is for abuse of that discretion." *Columbia Rio Grande Healthcare, L.P. v. Hawley*, 284 S.W.3d 851, 856 (Tex. 2009). When a trial court refuses to submit a requested instruction, the question on appeal is whether the request was reasonably necessary to enable the jury to render a proper verdict. *See* Tex. R. Civ. P. 277; *Hawley*, 284 S.W.3d at 855-56. For an instruction to be proper, it must: (1) assist the jury; (2) accurately state the law; and (3) find support in the pleadings and the evidence. *See* Tex. R. Civ. P. 278; *Hawley*, 284 S.W.3d at 855-56. The trial court does not abuse its discretion by refusing to submit unnecessary instructions, even when the instructions represent correct statements of law. *Ho & Huang Props., L.P.*, 2017 WL 2268915, at *4. Finally, a judgment will not be reversed for charge error unless the error probably caused the rendition of an improper verdict or probably prevented the appellant from properly presenting the case to the court of appeals. *Id.* (citing *Thota v. Young*, 366 S.W.3d 678, 687, 693 (Tex. 2012)); Tex. R. App. P. 44.1(a).

### 2. Application

■ Vast sought a materiality instruction as part of Question 1, which asked the jury whether Vast failed to comply with the agreement. On appeal, Vast argues that the instruction was warranted because the only breaches CTC claimed were "trivial" and "nonmaterial." According to Vast, "CTC claimed that Vast failed to comply with the Contract by requesting payment before submitting a schedule of values, and by not obtaining permits in a timely manner." But these were not the only factual bases for CTC's breach claim. As discussed, CTC also claimed that Vast failed to comply with the Subcontract by abandoning the Cornish Street Project. Because a reasonable jury could have found that Vast's abandonment of the project constituted a breach, the trial court's refusal to provide the requested materiality instructions for the reasons advanced by

Vast, even if error, did not probably cause the rendition of an improper judgment. *See Thota*, 366 S.W.3d at 686-87; *see also Shupe v. Lingafelter*, 192 S.W.3d 577, 579 (Tex. 2006) ("Error in the omission of an instruction is harmless when the findings of the jury in answer to other issues are sufficient to support the judgment." (internal quotation omitted)).

Accordingly, we overrule this portion of Vast's first issue.

### D. Sufficiency of the Evidence to Support the Jury's Damage Award

Also as part of its first issue, Vast contends that the evidence is insufficient to support the jury's damage award. CTC sought damages of $162,416.51, and the jury awarded $91,900. Vast asserts that the jury's damage award represents "the price difference between CTC's contract with Vast and CTC's contract with A&M." Vast claims that CTC's contract with A&M cannot form the basis of the jury's damage award because that contract covered more work than the contract between Vast and CTC. For the reasons explained below, however, we conclude that sufficient evidence supports the jury's damages finding.

#### 1. *Standard of Review*

According to Vast, the trial court "committed reversible error by finding sufficient evidence supports the amount of damages awarded." We construe Vast's challenge to damages as one grounded on factual insufficiency, as opposed to legal insufficiency, because Vast does not raise any of the grounds that traditionally underlie a legal sufficiency challenge. *See Marathon Corp.*, 106 S.W.3d at 727.

 When reviewing the factual sufficiency of the evidence, we examine the entire record, considering all the evidence both in favor of and contrary to the challenged finding. *Cain v. Bain*, 709 S.W.2d

175, 176 (Tex. 1986). We will overturn a finding only when it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). The fact finder is the sole judge of the weight and credibility of the witnesses' testimony; we may not substitute our judgment for that of the trial court simply because we might reach a different conclusion. *Hancock v. Worbington*, No. 14-15-00964-CV, 2017 WL 1181308, at *2 (Tex. App.—Houston [14th Dist.] Mar. 30, 2017, no pet.) (mem. op.).

 We apply the above standard mindful of Texas's long-settled deference to the fact-finder's discretion to fix appropriate and reasonable damage amounts. Under Texas law, "whether to award damages and how much is uniquely within the fact finder's discretion." *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 772 (Tex. 2003); *MEMC Pasadena, Inc. v. Riddle Power, LLC*, 472 S.W.3d 379, 408 (Tex. App.—Houston [14th Dist.] 2015, no pet.) A jury has broad discretion to award damages within the range of evidence presented at trial. *MEMC Pasadena*, 472 S.W.3d at 408; *City of Houston v. Harris Cty. Outdoor Advert. Ass'n*, 879 S.W.2d 322, 334 (Tex. App.—Houston [14th Dist.] 1994, writ denied). There is no requirement that the evidence show precisely how the jury arrived at the specific amount awarded. *MEMC Pasadena*, 472 S.W.3d at 408; *see also Mayberry v. Tex. Dep't of Agric.*, 948 S.W.2d 312, 317 (Tex. App.—Austin 1997, writ denied). A jury is "not tied to awarding damages exactly as requested by the injured party," and it does not have to rely solely on an expert's opinion in calculating damages. *MEMC Pasadena*, 472 S.W.3d at 408 (quoting *Bayer Corp. v. DX Terminals, Ltd.*, 214 S.W.3d 586, 606 (Tex. App.—Houston [14th Dist.] 2006, pet. denied)). When the evidence at

trial supports a range of damages, an award within that range is an appropriate exercise of the jury's discretion, and we may not speculate on how the jury actually arrived at its award. *See Vela v. Wagner & Brown, Ltd.*, 203 S.W.3d 37, 49 (Tex. App.—San Antonio 2006, no pet.). Nonetheless, a jury must have an evidentiary basis for its findings. *Salinas v. Rafati*, 948 S.W.2d 286, 289 (Tex. 1997); *MEMC Pasadena*, 472 S.W.3d at 408.

### 2. Application

The trial court instructed the jury to consider only the following elements of damages and none other:

> *Loss of the Benefit of the Bargain*—The difference between the reasonable costs CTC incurred in completing Vast's Contract and the agreed amount of Vast's Contract. The difference in value, if any, shall be determined at the time and place the supplemental work was performed.

According to this instruction, the jury was permitted to award damages in an amount it found represented the difference between CTC's reasonable costs incurred in completing the scope of work contemplated by the Subcontract with Vast and the amount CTC was obligated to pay Vast under the Subcontract had Vast completed the scope of work ($355,000).

 CTC hired multiple contractors to complete the Cornish Street Project scope of work under the Subcontract, including A&M Contractors, Winco Construction, Legacy Design Concrete, and CEMEX Concrete. CTC, through Crescenzi, presented evidence that A&M submitted payment applications for a total of $477,276.68 to complete the work on the Cornish Street Project.[10] Crescenzi testified, however, that $20,879 of this amount was outside the Subcontract's scope of work; thus, CTC presented evidence that it incurred $456,397.68 to complete a portion of the scope of work it claimed was covered by the Subcontract. Additionally, CTC provided evidence that it also paid Winco Construction, Legacy Design Concrete, and CEMEX Concrete $10,924.76, $31,136.07, and $18,960, respectively, to complete the Subcontract's scope of work for the Cornish Street Project. Crescenzi testified that all of the work performed by these contractors, except the work A&M performed for $20,879 discussed above, was part of the original scope of work for the Cornish Street Project contemplated by the Subcontract with Vast. Thus, CTC presented evidence that it had paid, or was obligated to pay, a total of $517,418.51 to complete the Cornish Street Project, which Vast agreed to perform for $355,000. Thus, evidence exists to support a finding that the difference between the reasonable costs CTC incurred in completing the Subcontract's scope of work and the agreed amount of Vast's Subcontract is as much as $162,418.51, which is almost exactly the amount CTC sought in damages.[11]

As noted above, the jury awarded CTC $91,900 in damages. Vast attributes this figure to the difference between A&M's

---

10. The record contains cancelled checks from CTC to A&M for a total amount of $422,197.45. However, Crescenzi testified that CTC had made recent payments to A&M that were not included in these cancelled checks, that CTC currently owed A&M approximately $20,000, and that CTC had a "payment agreement for CTC to pay A&M the remaining balance over two more months." Though CTC had not paid the remaining $20,000 to A&M as of trial, Vast does not challenge the inclusion of this amount within the scope of evidence the jury could have considered in arriving at a reasonable damage figure.

11. CTC requested $162,416.51. This minor difference in the amount CTC requested appears to stem from a calculation error at trial.

original contract price with CTC—$446,-900—and Vast's contract price—$355,000. Based on that premise, Vast challenges the sufficiency of the evidence to support the award because the respective scopes of work contemplated by each contract are not identical. Vast contends that CTC's contract with A&M included tasks that Vast's contract with CTC did not. Specifically, Vast asserts that CTC's contract with A&M required A&M to purchase a performance bond for $7,600, install a fire line for the Johnstone project for $9,610, and secure "all permits" for $7,000. Vast also asserts that CTC's contract with A&M included an unspecified amount for A&M's "assumption of the risk" because the contract conditioned CTC's payment to A&M on Carroll Ventures's payment to CTC.[12] Accordingly, Vast seeks a new trial.

We reject Vast's evidentiary challenge to the damage award for three reasons. First, Vast's fundamental premise is based on speculation. Though the damage amount aligns with the price difference between the two contracts, it is within the range of evidence presented at trial, and we do not speculate on how the jury actually arrived at this figure. See Vela, 203 S.W.3d at 49.

Second, assuming we agreed with Vast that CTC's contract with A&M included tasks that were not part of the work scope contemplated by Vast's Subcontract with CTC, including the obligation to obtain permits, Vast has identified on appeal only $24,210.00 in expenses that it claims were outside the scope of its Subcontract. Of that amount, the cost of "all permits" was

$7,000. The amount the jury awarded to CTC was $70,518.51 less than the difference between the amount CTC incurred to complete the Cornish Street Project and Vast's Subcontract price. Even if we eliminate the contested amounts specifically identified by Vast, the jury's damages award is still significantly less than those costs a reasonable jury could have believed CTC incurred in completing the work. Simply put, the jury's damages award is within the range of evidence presented at trial (excluding the amounts that CTC paid to A&M that Vast alleges were outside the scope of Vast's contract), and the evidence need not show precisely how the jury arrived at the specific amount. See MEMC Pasadena, 472 S.W.3d at 408-10.

Third, Vast has not shown how, considering all the evidence both in favor of and contrary to the finding, the jury's award is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. See Pool, 715 S.W.2d at 635; Cain, 709 S.W.2d at 176. Because the damages awarded by the jury were within the range of evidence presented by CTC at trial, there is sufficient evidence to support the jury's damages award. See id.; see also Vela, 203 S.W.3d at 49.[13]

In short, Vast has not established that it is entitled to a new trial based on its challenge to the damages award, and we overrule this portion of its first issue.

. * * *

For the foregoing reasons, Vast's first issue is overruled in its entirety.

---

**12.** The record does not reveal any evidence establishing the reasonable value of A&M's "assumption of the risk," nor does Vast assign any value to that item in its brief.

**13.** Even if we were to construe Vast's attack on the damages award as including a legal sufficiency challenge, we would conclude that

legally sufficient evidence supports it. Crescenzi's testimony as to the reasonable costs CTC incurred was largely unrefuted, and he specifically distinguished between those costs related to tasks contemplated by the Subcontract with Vast, as opposed to costs related to tasks outside that scope of work.

## E. Prompt-payment Provisions of the Texas Property Code

In its second issue, Vast asserts that it was entitled to recover for its claim under the prompt-payment provisions [14] as a matter of law. In its related fifth issue, Vast claims that it is entitled to attorneys' fees because it established that judgment in its favor under these provisions was proper as a matter of law. *See* Tex. Prop. Code § 28.005(b) (authorizing award of attorneys' fees for an action under the prompt-payment provisions). But, we conclude Vast has not established that CTC violated the prompt-payment provisions of the Texas Property Code; thus, Vast is not entitled to attorneys' fees under these provisions.

The prompt-payment statute provides:

A contractor who receives a payment ... from an owner in connection with a contract to improve real property shall pay each of its subcontractors the portion of the owner's payment, including interest, if any, that is attributable to work properly performed or materials suitably stored or specially fabricated as provided under the contract by that subcontractor, to the extent of that subcontractor's interest in the owner's payment. The payment required by this subsection must be made not later than the seventh day after the date the contractor receives the owner's payment.

Tex. Prop. Code § 28.002(b). In the event of a good faith dispute about the amount owed for a payment requested by a contractor, section 28.003(b) allows the party disputing the payment to withhold from the payment no more than the amount in dispute, but it does not exempt the withheld amount from accruing interest if it is ultimately determined that the amount requested is owed. *See id.* § 28.003(b); *Patel*

*v. Creation Constr., Inc.*, No. 05-11-00759-CV, 2013 WL 1277874, at *3 (Tex. App.—Dallas Feb. 27, 2013, no pet.) (mem. op.); *Gordon v. Leasman*, 365 S.W.3d 109, 118 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

In this case, the jury expressly found that CTC did not breach the Subcontract. Vast acknowledges that the jury did not reach the prompt-payment question provided to the jury because the jury determined that CTC did not breach the Subcontract. Thus, the jury did not determine that CTC owed Vast any amount whatsoever. Without such a determination, there is no support for Vast's claim that CTC violated the prompt-payment provisions. *Cf. Patel*, 2013 WL 1277874, at *3-4; *Gordon*, 365 S.W.3d at 119. And, because Vast did not establish its entitlement to judgment as a matter of law on this claim, Vast's claim for attorneys' fees likewise fails.

We overrule Vast's second and fifth issues.

## F. Texas Construction Fund Act Claim

In issue three, Vast asserts that the trial court reversibly erred by refusing to submit a jury question on its claimed violation of the Texas Construction Trust Fund Act (the "TCTFA"). *See* Tex. Prop. Code §§ 162.001-.033; *Dealers Elec. Supply Co. v. Scroggins Constr. Co.*, 292 S.W.3d 650, 652 (Tex. 2009). Vast urges that CTC misapplied Vast's trust funds by paying attorneys' fees unrelated to the Cornish Street Project in violation of the TCTFA. But, as we explain below, there was no evidence to support Vast's TCTFA claim, so the trial court did not err in refusing Vast's proposed jury question.

1. *Standard of Review and Governing Law*

---

14. *See* Tex. Prop. Code §§ 28.001-.010.

We review a trial court's determination of proper jury instructions for an abuse of discretion. *See Hawley*, 284 S.W.3d at 856. And a trial court must submit "such instructions and definitions as shall be proper to enable the jury to render a verdict." Tex. R. Civ. P. 277. A party is entitled to jury questions, instructions, or definitions raised by the pleadings and evidence. Tex. R. Civ. P. 278; *see also Tex. Workers' Comp. Ins. Fund v. Mandlbauer*, 34 S.W.3d 909, 912 (Tex. 2000). To constitute sufficient evidence to warrant a jury question, the evidence must create more than a mere surmise or suspicion of its existence; there must be more than a scintilla of evidence of a claim to support submission of a jury question on that claim. *See WCW Int'l, Inc. v. Broussard*, Nos. 14-12-01077-CV, 14-12-01139-CV, 2014 WL 2700892, at *11-12 (Tex. App.—Houston [14th Dist.] 2014, pet. denied) (mem. op.).

Under the TCTFA, payments made to a contractor or subcontractor under a construction contract for the improvement of real property are considered trust funds. Tex. Prop. Code § 162.001(a); *Dealers Elec. Supply Co.*, 292 S.W.3d at 657. Subcontractors who furnish labor or material for the construction project are considered beneficiaries of any trust funds paid or received in connection with the improvement. Tex. Prop. Code § 162.003; *Dealers Elec. Supply Co.*, 292 S.W.3d at 657. A trustee misapplies trust funds if it "intentionally or knowingly or with intent to defraud, directly or indirectly retains, uses, disburses, or otherwise diverts trust funds without first fully paying all current

or past due obligations incurred by the trustee to the beneficiaries of the trust funds." Tex. Prop. Code § 162.031(a).

## 2. *Application*

Vast adduced testimony from CTC's Crescenzi that CTC paid attorneys' fees for legal expenses related to the Cornish Street Project. But there simply was no evidence that CTC used trust funds to pay these expenses. *See id.*[15] Without evidence that CTC used, disbursed, or otherwise diverted trust funds, Vast offered nothing to support its TCTFA claim. *See* Tex. Prop. Code § 162.031(a). And without any evidence to support this claim, the trial court did not abuse its discretion by refusing to submit Vast's requested question on this claim to the jury. *Cf. WCW Int'l Inc.*, 2014 WL 2700892, at *12 (citing *4901 Main, Inc. v. TAS Automotive, Inc.*, 187 S.W.3d 627, 630 (Tex. App.—Houston [14th Dist.] 2006, no pet.), and explaining that a trial court may refuse to submit a question to the jury if there is no evidence to support the question).

Vast's third issue is overruled.

## G. Attorneys' Fees

In its fourth issue, Vast asserts that the trial court erred in awarding CTC attorneys' fees under Texas Civil Practice and Remedies Code section 38.001. CTC responds that it sought attorneys' fees under the indemnification provision of the Subcontract, in addition to Chapter 38. Texas follows the American Rule, which provides that litigants may recover attorneys' fees only if specifically provided for by statute or contract. *Epps v. Fowler*, 351

---

**15.** Further, it is an affirmative defense to a claim under the TCTFA that the trust funds were used by the trustee to pay the trustee's actual expenses directly related to the construction or repair of the improvement. *See* Tex. Prop. Code § 162.031(b); *Dealers Elec. Supply Co.*, 292 S.W.3d at 659. Crescenzi testified without objection that the funds CTC received from Carroll Ventures went back into the project; he unequivocally stated that these funds were used to pay CTC's actual expenses directly related to the project. *See* Tex. Prop. Code § 162.031(b).

S.W.3d 862, 865 (Tex. 2011). Thus, as a preliminary matter, we must address CTC's appellate contention that it sought attorneys' fees under the Subcontract.

The record shows that CTC did not plead for attorneys' fees under the Subcontract; instead, it sought attorneys' fees only under "Chapter 38 of the Texas Civil Practice & Remedies Code." When, as here, a party pleads a specific ground for recovery of attorneys' fees, the party is limited to that ground and cannot recover attorneys' fees on another, unpleaded ground. *See* Tex. R. Civ. P. 301 (stating that judgment must conform to pleadings); *see also Intercont'l Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 659 (Tex. 2009) (holding that party waived its right to recover attorneys' fees under contractual provision by pleading for attorneys' fees only under Chapter 38); *Peterson Grp., Inc. v. PLTQ Lotus Grp., L.P.*, 417 S.W.3d 46, 61 (Tex. App.—Houston [1st Dist.] 2013, pet. denied) ("In light of this difference in application of statutory and contractual attorney's fees, and because a court's judgment must conform to the pleadings, *see* Tex. R. Civ. P. 301, a party who pleads for attorney's fees only under Chapter 38 waives its claim for attorney's fees under a contractual provision."); *Heritage Gulf Coast Props., Ltd. v. Sandalwood Apartments, Inc.*, 416 S.W.3d 642, 660 (Tex. App.—Houston [14th Dist.] 2013, no pet.). Thus, CTC waived any claim for attorneys' fees under the Subcontract by failing to plead it.

The only potential basis supporting CTC's attorneys' fee award is Chapter 38 of the Texas Civil Practice and Remedies Code. The availability of attorneys' fees under a particular statute is a question of law for the court. *Alta Mesa Hold-*

*ings, L.P. v. Ives*, 488 S.W.3d 438, 453 (Tex. App.—Houston [14th Dist.] 2016, pet. denied).

Section 38.001 provides that "[a] person may recover reasonable attorney's fees from an individual or corporation . . . if that claim is for . . . an oral or written contract." Tex. Civ. Prac. & Rem. Code § 38.001(8). This court has determined that section 38.001 "does not authorize the recovery of attorney's fees in a breach of contract action against an LLC [limited liability company]." *See Alta Mesa Holdings, L.P.*, 488 S.W.3d at 452-55 (analyzing section 38.001 and concluding that "corporation" as used in this statute does not include limited liability companies).[16] Thus, CTC may not recover attorneys' fees under section 38.001 against Vast, a limited liability company, as a matter of law.

Accordingly, we sustain Vast's fourth issue.

### Conclusion

Because the trial court erred in awarding attorneys' fees on CTC's breach of contract claim against Vast, we modify the trial court's judgment to delete all portions awarding attorneys' fees, including appellate attorneys' fees, to CTC.

Having overruled the remainder of Vast's issues, we affirm the judgment as modified.

---

16. Legislation was proposed to amend section 38.001 to reflect that a person may recover reasonable attorneys' fees from "organiza- tions," including limited liability companies, but the bill did not pass. *See* Tex. H.B. 744, 85th Leg., R.S. (2017).