**Reversed and Remanded and Memorandum Opinion filed August 25, 2022.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-20-00069-CV

---

## WARRIOR ENERGY SERVICES CORPORATION, Appellant

## V.

## OILFIELD SPECIALTIES, LLC, Appellee

---

**On Appeal from the 80th District Court
Harris County, Texas
Trial Court Cause No. 2018-35023**

---

### MEMORANDUM OPINION

Appellant Warrior Energy Services Corporation appeals the trial court's final judgment in favor of appellee Oilfield Specialties, LLC on its claims for breach of contract. In issues 1, 2, and 3, Warrior argues the judgment contains reversible error because Warrior conclusively proved its defenses of (1) waiver, (2) accord and satisfaction, and (3) estoppel. In issue 4, Warrior argues the trial court reversibly erred in its interpretation of the agreements at issue. We sustain issue 1 and, without reaching issues 2, 3, and 4, reverse the trial court's judgment.

We remand the case to the trial court for further proceedings limited to reconsideration of damages, pre- and post-judgment interest, attorney's fees, and costs.

## I. BACKGROUND

Don Umphries and Gabe Williger worked for Warrior. During their employment, Umphries and Williger developed an oilfield tool referred to as WIPR. Under "side agreements" to their employment agreements, Warrior agreed to pay Umphries and Williger royalties for exclusive proprietary use of the WIPR tool. Each agreement contained the following language:

> If, during the term hereof, the Employee develops, in whole or in part, a patentable process or product for use in the energy services business, Employer shall have the first right to the exclusive proprietary use of said process or product, subject to paying Employee a twenty-five percent (25 %) royalty of Gross Revenue. Royalty will be paid within 30 days of payment of invoice by Customer.

Beginning in 2010, Warrior paid a single 25% royalty to Oilfield, a company Umphries and Williger created to receive royalty payments on their behalf. Beginning in 2013, Warrior began excluding certain revenues from the "Gross Revenue" used to calculate the royalty payments.

Warrior stopped paying royalties in 2018 after the parties were unable to renegotiate the royalty agreements following the expiration of Umphries's and Williger's employment agreements with Warrior. Oilfield filed this lawsuit in May 2020 asserting breach-of-contract claims for underpayment of royalties owed to Umphries and Williger. Among its contentions, Oilfield claimed that Warrior breached the royalty agreements by (1) paying a single 25% royalty instead of paying Umphries and Williger 25% each and (2) taking impermissible deductions from gross revenue. Warrior asserted, among other defenses, the affirmative

2

defense of waiver.

After a jury trial, the jury found that Warrior breached the agreements and that Umphries, Williger, and Oilfield did not waive their breach-of-contract claims, and found damages of $5,606,962 in royalties on behalf of each of Umphries and Williger. The trial court signed a final judgment in favor of Oilfield awarding the damages found by the jury and further awarding pre- and post-judgment interest, attorney's fees, and costs to Oilfield.

## II. ANALYSIS

### A. Preservation of error

We first address Oilfield's argument that Warrior did not preserve error as to the sufficiency of the evidence supporting its waiver defense asserted in issue 1. In its motion for judgment notwithstanding the verdict,[1] Warrior argued that, contrary to the jury's answers to the jury questions, the evidence "conclusively establishes the affirmative defense of waiver," elaborating as follows:

> The evidence conclusively established that Oilfield Specialties or Umphries[2] waived Warrior's failure to comply. That is, the evidence conclusively established that Oilfield Specialties or Umphries intentionally surrendered a known right or engaged in intentional conduct inconsistent with claiming that right. The jury's contrary answer is supported by legally insufficient evidence.

While Oilfield contends this language is not sufficiently specific to preserve error,

---

[1] A motion for judgment notwithstanding the verdict may be used to preserve legal-sufficiency issues for appeal. *See* Tex. R. Civ. P. 279 ("A claim that the evidence was legally or factually insufficient to warrant the submission of any question may be made for the first time after verdict, regardless of whether the submission of such question was requested by the complainant."); *Musallam v. Ali*, 560 S.W.3d 636, 639 (Tex. 2018) ("a motion for judgment notwithstanding the verdict or motion to disregard the jury's answer will also preserve error" regarding legal sufficiency).

[2] Warrior also made the same arguments as to Williger in its motion for judgment notwithstanding the verdict.

3

the supreme court has determined that less-specific language may preserve legal-sufficiency issues on appeal. *See Arkoma Basin Expl. Co., Inc. v. FMF Associates 1990-A, Ltd.*, 249 S.W.3d 380, 387 (Tex. 2008) (post-trial motion asserting that "there is no evidence . . . to support the jury's answers to each part of Question 4" preserved legal-sufficiency issue). As explained by the supreme court, "[g]enerally, a no-evidence objection directed to a single jury issue is sufficient to preserve error without further detail. Thus, as Justice Calvert wrote for this Court 50 years ago, while a single such objection to all 79 jury answers is too general, the same objection addressed to each individual issue is adequate." *Id.* (citing *Biggers v. Continental Bus Sys., Inc.*, 303 S.W.2d 359, 361 (1957) (Calvert, J.)). We conclude Warrior's objection was sufficiently specific to preserve error. *Cf.* Tex. R. App. P. 33.1(a).

Oilfield also argues that Warrior's waiver issue is barred because Warrior "invited error" by requesting a jury issue as to this defense, thereby conceding, contrary to its argument on appeal, that there was a fact issue as to waiver. Texas Rule of Civil Procedure 279, however, states, "A claim that the evidence was legally or factually insufficient to warrant the submission of any question may be made for the first time after verdict, regardless of whether the submission of such question was requested by the complainant." Tex. R. Civ. P. 279. Likewise, the supreme court recognizes that a party that requests a jury question does "not forfeit the right to later challenge [on appeal] the legal sufficiency of the evidence to support it." *Musallam v. Ali*, 560 S.W.3d 636, 639 (Tex. 2018). We conclude that Warrior's waiver issue is not barred due to invited error.

## B. Waiver

In issue 1, Warrior argues it proved its waiver defense as a matter of law. The affirmative defense of waiver can be asserted against a party who either

4

(1) intentionally relinquishes a known right or (2) engages in intentional conduct inconsistent with claiming that right.[3] *Tenneco Inc. v. Enterprise Prods. Co.*, 925 S.W.2d 640, 643 (Tex. 1996). Silence or inaction for so long a period as to show an intention to yield the known right is enough to prove waiver. *Id.* While waiver is ordinarily a question of fact, when the facts and circumstances are admitted or clearly established, the question becomes one of law. *Id.*

The jury answered the following questions regarding liability and waiver:

## QUESTION 1

1a.     Did Warrior fail to comply with the agreement to pay Don Umphries a twenty-five percent (25%) royalty of gross revenue within 30 days of payment of invoice(s) by Warrior's customer on or after April 24, 2014?

Answer *Yes* or *No*:

    YES

1b.     Did Warrior fail to comply with the agreement to pay Gabe Williger a twenty-five percent (25%) royalty of gross revenue within 30 days of payment of invoice(s) by Warrior's customer on or after April 24, 2014?

Answer *Yes* or *No*:

    YES

*If you answered Yes to Question 1a, answer Question 2a.*
*If you answered Yes to Question 1b, answer Question 2b.*

---

[3] This definition is materially identical to the definition given to the jury in question 2: "Waiver is an intentional surrender of a known right or intentional conduct inconsistent with claiming the right." *Cf. Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) ("[I]t is the court's charge, not some other unidentified law that measures the sufficiency of the evidence when the opposing party fails to object to the charge."). Oilfield objected to the inclusion of question 2 in the charge on the grounds there was legally insufficient evidence of waiver; it did not object to the definition of waiver as stated in the charge.

# QUESTION 2

Failure to comply by Warrior Energy Services is excused if compliance was waived by Oilfield Specialties, Don Umphries, and/or Gabe Williger. Waiver is an intentional surrender of a known right or intentional conduct inconsistent with claiming the right.

2a.  Was Warrior's failure to comply, if any, with the Employment Agreement with Don Umphries excused by waiver by Don Umphries or Oilfield Specialties?

Answer *Yes* or *No*:

　　　NO

2b.  Was Warrior's failure to comply, if any, with the Employment Agreement with Gabe Williger excused by waiver by Gabe Williger or Oilfield Specialties?

Answer *Yes* or *No*:

　　　NO

For purposes of our analysis, the jury questions on liability (1a and 1b) have two components: (1) whether Warrior breached its agreements with Umphries and Williger by paying a single 25% royalty instead of paying each employee a 25% royalty, and (2) whether Warrior breached the agreements by paying royalties on something less than "gross revenue" by taking deductions from revenues before calculating the royalty payments. Accordingly, we address whether each was waived in turn.

## 1. 25% royalty

We first address waiver as to the argument that Warrior breached the agreements by paying a combined 25% royalty to Umphries and Williger (via Oilfield) instead of paying royalties of 25% each to Umphries and Williger. In issue 1, Warrior argues the evidence conclusively shows this claim was waived.

The evidence shows that, from the time Warrior began paying royalties in 2010, Warrior paid a single 25% royalty. Umphries and Williger were aware that Warrior was paying a single 25% royalty and not a 25% royalty to each of them. Umphries testified that he did not complain that the royalty payment was too low. Williger, when asked whether he had complained about the royalty amount, stated that, in 2010 or 2011, he called a Warrior representative and left "at least one," "maybe two" voicemails; the specific contents of the voicemails are not in the record. Instead, Oilfield, on behalf of Umphries and Williger, sent monthly invoices to Warrior requesting payment for a single 25% royalty. Umphries and Williger made no further complaint until 2017,[4] when the following language was added to the Oilfield invoices: "This invoice may not represent the total owed."

In short, it is undisputed that neither Umphries, nor Williger, nor Oilfield made any complaint about the royalty percentage from the time of Williger's message or messages in 2010 or 2011 until the addition of the disclaimer to Oilfield invoices in 2017. During that time, spanning at least five full years, Oilfield sent Warrior monthly invoices requesting a single 25% royalty, and received payments from Warrior based on that request.

By 2017, Umphries and Williger had waived their claim to a double 25% royalty as a matter of law by both remaining silent about their purported entitlement to a double 25% royalty and actively invoicing Warrior for a single 25% royalty. In *Tenneco*, for example, the supreme court determined that plant

---

[4] Oilfield argues on appeal that Umphries and Williger did not complain due to "duress." Essentially, Oilfield argues that the evidence shows that Umphries and Williger felt that if they did not accede to Warrior's demands, Warrior would pay them nothing. Oilfield, however, did not plead the defense of duress or request a jury instruction on duress, and does not argue on appeal that duress was tried by consent or conclusively established by the evidence. *See* Tex. R. Civ. P. 94 (duress is affirmative defense that must be pleaded and proved), 279 ("Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived.").

owners waived, as a matter of law, a claimed contractual entitlement to delivery of 31,000 barrels of oil per day when, "over a period of three years, . . . no owner complained" that not enough oil was being delivered, despite knowledge that they were receiving "substantially less than 31,000 barrels per day." *See Tenneco*, 925 S.W.2d at 643. Following the reasoning of *Tenneco*, we determine that the evidence conclusively proves that, by 2017, Umphries and Williger had waived their claim for a double 25% royalty.

We next consider whether the 2017 addition of a disclaimer to Oilfield invoices revived the right to claim a double 25% royalty. "It has long been the law in this state that even though a party may have once waived a contract right in the past, it may enforce that right in the future by giving notice of its intention to do so." *Valero Energy Corp. v. Teco Pipeline Co.*, 2 S.W.3d 576, 594 (Tex. App.— Houston [14th Dist.] 1999, no pet.) (quotation omitted); *see A. L. Carter Lumber Co. v. Saide*, 168 S.W.2d 629, 630 (Tex. 1943) (party may assert its right to future strict compliance with contract by notifying other party of its intent to do so and allowing reasonable time for other party to comply). Here, however, the disclaimer simply states that "This invoice may not represent the total owed." This language does not indicate that Umphries, Williger, or Oilfield intended to enforce any contractual right in the future; indeed, it does not specifically identify any right that might be enforced. Accordingly, we conclude that the disclaimer does not create a fact issue as to waiver.

We conclude that, as to the royalty percentage, Warrior proved its waiver defense as a matter of law.

## 2. Gross revenue

The parties also disputed whether the royalty rate had been paid on "gross revenue." In 2013, Warrior began excluding certain revenues received from

customers from its calculation of the royalty payments. Warrior sent monthly emails detailing the amount of revenues included in, and excluded from, the royalty calculation, along with supporting documentation, such as field tickets and customer invoices. Oilfield's invoices for royalty payments were based on these calculations and reflected the exclusions specified by Warrior.

Oilfield contends these exclusions breached Warrior's contractual obligation to pay royalties on "gross revenue" associated with the WIPR tool. Umphries testified that, while he asked a Warrior representative about the new calculations in 2013, he never complained that the exclusions breached the royalty agreement. Williger testified that he sent emails in 2013 complaining about the new calculations. Umphries and Williger made no further complaint until 2017, when the disclaimer that "This invoice may not represent the total owed" was added to the Oilfield invoices.

The record again demonstrates waiver as a matter of law. For at least three full years, Umphries and Williger did not complain about the exclusions from gross revenue. Instead, via Oilfield, they invoiced Warrior based on the revised revenue calculations. As detailed above, this demonstrates waiver, i.e., intentional conduct inconsistent with claiming a right, as a matter of law. *See Tenneco*, 925 S.W.2d at 643. And as above, the disclaimer added to Oilfield's invoices was insufficient to revive the waived right. *See A. L. Carter Lumber*, 168 S.W.2d at 630.

Concluding that Umphries and Williger, in conjunction with Oilfield, waived their claim that Warrior breached the royalty agreements by paying a combined 25% royalty and taking deductions from gross revenue, we sustain issue 1.

9

### III.    CONCLUSION

Having sustained Warrior's issue 1, we reverse the trial court's judgment without reaching issues 2, 3, and 4, as resolution of these issues would not entitle Warrior to additional relief. Tex. R. App. P. 47.1. Warrior argues that we should render a take-nothing judgment on Oilfield's claims, given that the jury questions asked only whether Warrior breached the contract by not paying two 25% royalties. Oilfield argues that, even if we conclude the claims were waived, there is a third ground on which the jury could have awarded damages, namely that Warrior did not pay even a single 25% royalty beginning in 2018.[5]

Ultimately, these questions hinge on matters that have not been considered by the trial court or fully briefed in this court. "Remand is appropriate when a case, for any reason, has not been fully developed." *Abatecola v. 2 Savages Concrete Pumping, LLC*, No. 14-17-00678-CV, 2018 WL 3118601, at \*14 (Tex. App.— Houston [14th Dist.] June 26, 2018, pet. denied) (mem. op.) (citing *United States Fire Ins. Co. v. Carter*, 473 S.W.2d 2, 3 (Tex. 1971) and collecting cases).

---

[5] Oilfield cites our decision in *Vast Construction, LLC v. CTC Contractors, LLC* for its argument that we could affirm the judgment, including all damages, on this alternate theory of recovery. 526 S.W.3d 709 (Tex. App.—Houston [14th Dist.] 2017, no pet.). *Vast*, however, is distinguishable. In *Vast*, "the jury was asked, in a broad-form submission, whether Vast failed to comply with the Subcontract. No limiting instructions accompanied the question[.]" *Id.* at 719. Accordingly, "[g]iven the wording of the question, the jury could have found a failure to comply with the Subcontract based on the failure to perform any obligation contained in the agreement and supported by legally sufficient evidence[.]" *Id.* Here, by contrast, jury questions 1a and 1b asked whether Warrior breached the agreements by not paying Umphries and Williger 25% each in royalties on gross revenues. These questions do not have the same breadth as the question in *Vast*, which merely asked if appellant had "failed to comply with the Subcontract." *Id.* Accordingly, we conclude that Oilfield's alternate theory of recovery does not entitle it to all damages awarded by the jury, as was the case in *Vast*. To the extent it may support some award of damages is a question that can be addressed on remand.

10

Accordingly, we remand the case to the trial court for further proceedings limited to reconsideration of damages, pre- and post-judgment interest, attorney's fees, and costs. Tex. R. App. P. 43.2(d).


/s/    Charles A. Spain
Justice

Panel consists of Justices Bourliot, Zimmerer, and Spain.