# IN THE SUPREME COURT OF TEXAS

═══════════
No. 17-0762
═══════════

MUSA ("MOSES") N. MUSALLAM, PETITIONER,

v.

AMAR B. ALI, RESPONDENT

═══════════════════════════════════════
ON PETITION FOR REVIEW FROM THE
COURT OF APPEALS FOR THE SECOND DISTRICT OF TEXAS
═══════════════════════════════════════

**Argued September 13, 2018**

JUSTICE JOHNSON delivered the opinion of the Court.

Musa "Moses" Musallam and Amar Ali entered into a written agreement relating to the sale of Musallam's business to Ali. Musallam refused to close, maintaining that the agreement lacked essential elements of a binding contract and was thus only an agreement to agree. The case was tried to a jury. Musallam requested a jury question asking whether he and Ali had agreed to the sale of the business, and, naturally, did not object to the trial court's including the question in the jury charge. The jury found that they had agreed. By motion for judgment notwithstanding the verdict, Musallam challenged that answer.

The trial court denied Musallam's motion and rendered judgment for Ali. Musallam appealed, in part, challenging the jury's finding that he agreed to sell the business to Ali. The court of appeals determined that because Musallam did not object to the question, he failed to preserve

error to challenge either its inclusion in the charge or the jury's answer to it. We disagree with the court of appeals. Accordingly, we reverse and remand to that court.

## I. Background

Musallam owns Fanci Candy, Inc., a wholesale distributer of candy and tobacco products. At times relevant to this matter, Fanci Candy had contracts to buy tobacco products directly from Altria Group Distribution Company (the owner of Philip Morris and U.S. Tobacco) and Lorillard Tobacco Company. In April 2012, Musallam approached Ali, the vice president of convenience store distribution business A to Z Wholesalers, Inc., about purchasing Fanci Candy. A to Z Wholesalers did not have a direct contract with either Altria or Lorillard, thus it bought those companies' tobacco products through middlemen and paid higher prices for them than did Fanci Candy. Because Altria and Lorillard ordinarily would not enter into new contracts to sell directly to wholesalers, businesses that wanted to buy directly from them usually sought to do so by buying companies that had direct contracts. But the Altria and Lorillard direct-purchase contracts would not necessarily transfer if Fanci Candy was sold: both Altria and Lorillard reserved the right to discontinue direct sales to Fanci Candy absent their approval of its purchaser.

Ali and Musallam reached an agreement regarding the sale of Fanci Candy and signed a letter of intent.[1] The closing date was listed as "[i]mmediate, subject to preapproval" from Altria and Lorillard. Altria initially refused to approve the application to transfer Fanci Candy's ownership, but did so after Ali and Musallam resubmitted the application.

_____

[1] The letter of intent listed A to Z as the buyer, but also provided that A to Z could assign its rights. Ali testified that he and Musallam chose to state that A to Z was the buyer because it was a stronger candidate as a purchaser that they believed the tobacco companies would be more inclined to approve.

2

While waiting on approval from Lorillard, Ali and Musallam executed a Stock Transfer and Asset Purchase and Sale Agreement (Stock Transfer Agreement, or Agreement) by which Musallam agreed to sell to Ali all Fanci Candy stock shares along with other assets used in the business such as land, buildings, inventory, vehicles, fixtures, and equipment. The purchase price for the stock was $500,000, subject to the contingency that if Musallam was unable to obtain written approval from both Altria and Lorillard for the direct contracts to remain in force, the price would be reduced to $250,000. Because Altria had approved the change of ownership, the sales price hinged on Lorillard's approval. The Stock Transfer Agreement provided that the sales price for the furniture, fixtures, and equipment such as stamping and packing machines would be their value "as mutually agreed upon by the parties prior to the Closing Date," and the price of the land and building would be the value set by an appraisal to be accomplished before the closing date. Closing was to take place on or before July 1, 2013.

On June 28, 2013, Lorillard notified Ali that it would not approve the change in ownership. Musallam and Ali discussed resubmitting the application to Lorillard as they had done with Altria. Musallam also proposed postponing the July 1 closing date, but Ali would not agree to the change. At that point, Musallam and Ali had not come to an agreement as to the value of the furniture, fixtures, and equipment, and Musallam disputed the value of the land and building as determined by the appraisal.

Ali appeared for the closing on July 1, but Musallam did not. Instead, on July 2, Musallam sued Ali seeking a declaratory judgment that (1) the Stock Transfer Agreement was unenforceable and void because the parties did not agree on all its essential terms, and (2) Musallam had not

breached the Agreement. Ali counterclaimed, asserting various claims including a claim for damages because Musallam had indeed breached the Agreement.

The case was tried to a jury. The trial court submitted the following question and instructions as part of the jury charge:

**Question No. 1**

Did Moses Musallam and Amar Ali agree to the sale and transfer of Fanci Candy Company in the Stock Transfer and Asset Purchase and Sale Agreement?

In deciding whether the parties reached an agreement, you may consider what they said and did in light of the surrounding circumstances, including any earlier course of dealing. You may not consider the parties' unexpressed thoughts or intentions.

If Moses Musallam and Amar Ali agreed to other essential terms but failed to specify price, it is presumed a reasonable price was intended.

Answer "Yes" or "No."

Musallam requested the submission, while Ali objected to it. Ali argued that "the evidence is clear and unequivocal that both parties signed the stock transfer and asset purchase agreement" and there was no question that Ali and Musallam reached an agreement. In response to Ali's objection, Musallam asserted that when an agreement leaves material terms open for future adjustment it is not binding but constitutes merely an agreement to agree. He argued that whether the price for furniture, fixtures, equipment, and other open issues were material terms was a fact question for the jury that must be determined before the court could decide the legal question of whether the Stock Transfer Agreement was a binding contract or merely an agreement to agree.

4

The jury answered Question 1 "Yes," and found in response to Question 2 that Musallam failed to comply with the Stock Transfer Agreement. The jury also found that Ali suffered $904,924 in lost profit damages. The trial court rendered judgment for Ali based on the jury's findings and also awarded attorney's fees to Ali.

Musallam filed a Motion for New Trial and a Motion for Judgment Notwithstanding the Verdict or, in the Alternative, Motion to Disregard. In his motion for judgment notwithstanding the verdict, Musallam asked the court to disregard all the jury findings and render judgment that no contract existed between the parties. He asserted that Question 1 and the jury's answer to it should be disregarded because (1) whether the Stock Transfer Agreement was an enforceable contract was a question of law, and (2) the evidence conclusively proved that the Stock Transfer Agreement was merely an unenforceable agreement to agree because it left key elements of the total purchase price open for further negotiation. The trial court denied Musallam's motions.

In the court of appeals Musallam asserted that (1) the Stock Transfer Agreement was an "agreement to agree" and not a binding enforceable agreement, (2) insufficient evidence supported the jury's finding for lost profits on Ali's breach of contract claim, and (3) the trial court erred by failing to submit a question in the jury charge. The court of appeals affirmed. ___ S.W.3d ___ (Tex. App.—Fort Worth 2017). Regarding enforceability of the Stock Transfer Agreement, the court of appeals stated that it understood Musallam's argument to be that "[The jury's] finding [on Question No. 1] should be disregarded as immaterial because whether a particular agreement is an enforceable contract is a question of law." *Id.* at ___. The court noted that a jury question may be deemed immaterial and disregarded if it calls for a finding beyond the province of the jury, such as on a

5

question of law. *Id.* (citing *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994)). However, the appeals court did not address Musallam's argument. It agreed with Ali that Musallam failed to preserve error as to Question 1 because he did not object to its submission. *Id.* at ___. The court also determined that the evidence of lost profits was sufficient to support the jury's award, and that Musallam's issue regarding the trial court's failure to include a question in the jury charge was inadequately briefed and thus waived. *Id.* at ___ n.3, ___.

In this Court, Musallam's prime argument is that the court of appeals erred by failing to address the merits of his assertion that the Agreement was an unenforceable agreement to agree. He claims that his failure to object to Question 1 did not preclude him from later arguing either that the jury's finding was not supported by the evidence, or that as a matter of law the Stock Transfer Agreement was an unenforceable agreement to agree. We agree with Musallam.

## II. Discussion

We first address Musallam's assertion that his failure to object to Question 1 did not preclude him from later challenging the sufficiency of the evidence to support the jury's answer to it.

Texas Rule of Civil Procedure 279 provides that "[a] claim that the evidence was legally or factually insufficient to warrant the submission of any question may be made for the first time after verdict, regardless of whether the submission of such question was made by the complainant." While a party may preserve a no evidence issue by objecting to submission of the issue to the jury, a motion for judgment notwithstanding the verdict or motion to disregard the jury's answer will also preserve error. *Steves Sash & Door Co., Inc. v. Ceco Corp.*, 751 S.W.2d 473, 477 (Tex. 1988). Accordingly, by requesting Question 1 Musallam did not forfeit the right to later challenge the legal

6

sufficiency of the evidence to support it.  *See Simon v. Henrichson*, 394 S.W.2d 249, 257 (Tex. Civ. App.—Corpus Christi 1965, writ ref'd n.r.e.) ("Objection of no evidence can be made for the first time after verdict, regardless of whether the submission of such issue was requested by the complaining party or not." (citing TEX. R. CIV. P. 279)).

Next we consider whether Musallam's failure to object to Question 1 precluded him from later challenging the jury's answer to it as being immaterial.

Trial courts may disregard a jury finding if the finding is immaterial.  *See USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 505 (Tex. 2018) (citing *Spencer*, 876 S.W.2d at 157).  Ali contends that, as the court of appeals determined, Musallam's complaint is about jury charge error and he was required to raise it by objecting to the charge.  ___ S.W.3d at ___ (citing TEX. R. CIV. P. 272–74).  However, a complaint that a jury's answer is immaterial is not a jury charge complaint. *See BP Am. Prod. Co. v. Red Deer Res., LLC*, 526 S.W.3d 389, 402 (Tex. 2017).  Accordingly, a party need not object to a jury question to later argue that it is immaterial.  *Id.* ("BP preserved error on the immateriality issue by raising these concerns post-verdict in a motion for judgment in disregard, in a motion for judgment notwithstanding the verdict, and in a motion for new trial."); *see Nat'l Plan Adm'rs, Inc. v. Nat'l Health Ins. Co.*, 235 S.W.3d 695, 703–04 (Tex. 2007).  The court of appeals erred by holding otherwise.

Having concluded that Musallam's failure to object to Question 1 did not forfeit his right to later challenge submission of the question and the jury's answer to it, we turn to Musallam's assertion that he never had a binding and enforceable agreement with Ali.  As already noted, the court of appeals did not address the issue, concluding that Musallam waived it.

7

If a party raises an issue in this court that was briefed but not decided in the court of appeals, we may either remand the case to the court of appeals to consider the issue or consider it ourselves. TEX. R. APP. P. 53.4. Musallam urges us to consider the issue and render judgment in his favor, asserting that the evidence clearly establishes there was no agreement between the parties. However, he simply references pages of his brief in the court of appeals in support of his position. Given the posture of the case and the arguments, we conclude that the appropriate disposition is to remand to the court of appeals for it to first address issues properly preserved but which we have not addressed. *See First Bank v. Brumitt*, 519 S.W.3d 95, 112 (Tex. 2017) ("Because First Bank has not addressed the sufficiency-of-the-evidence issue in its briefing to this Court, we believe it is better to remand for the court of appeals to consider and address the issue in the first instance.").

### III.  Conclusion

Musallam's requesting jury Question 1 did not preclude him from later challenging the jury's answer to that question. Because the court of appeals held otherwise, we reverse its judgment and remand to that court for further proceedings.

Phil Johnson
Justice

**OPINION DELIVERED:**  October 26, 2018

8