# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *LAZY W CONSERVATION DISTRICT,* <br> *APPELLANT* | § | *APPEAL FROM THE 3RD* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *ARLIS A. JONES,* <br> *APPELLEE* | § | *HENDERSON COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Lazy W Conservation District appeals from a judgment of May 20, 2022. We reverse and remand for a new trial.

### BACKGROUND

In September 2019, Lazy W filed a petition for condemnation of property owned by Appellee, Arlis A. Jones. Lazy W alleged that the property was necessary for the provision of additional habitat for wildlife. Jones asserted that Lazy W's attempted condemnation was fraudulent and made in bad faith. A jury agreed with Jones. The trial court rendered judgment for Jones, awarded him title and possession of the property, and denied Lazy W's right to condemn the property. Lazy W appealed.[1]

The reporter's record was originally due on July 23, 2022. The record was to comprise five volumes: (1) the master index, (2) the first day of trial, consisting of qualification of the jury panel, void dire, opening statements, and live testimony from Jones, (3) the second day of trial, consisting of deposition testimony from Montgomery Bennett (Lazy W president and board member) and Brian Wheeler (Lazy W board member), and live testimony from appraiser Jamie Wickliffe and

---

[1] The Honorable Christi J. Kennedy is a retired Judge for the 114th District Court in Smith County, Texas, sitting by assignment.

Wheeler, (4) the third day of trial, consisting of live testimony from Wheeler, reading of the charge, arguments of counsel, and the verdict, and (5) the exhibits.

On July 25, Reporter Beverly Dixon filed a motion for extension of time to file the reporter's record, which we granted to August 5. On August 8, Dixon filed a second motion for extension, which we granted to August 17. On August 18, the Clerk of this Court notified Dixon that the record was past due and gave Dixon until August 29 to file the record. On August 18, Dixon filed a third motion seeking an extension to August 29. On August 18, Lazy W's counsel filed a response to Dixon's third motion, in which it opposed further extensions and expressed concern that Dixon may have lost notes or records pertinent to the appeal. On August 24, this Court requested that Dixon respond to Lazy W's objection by August 29.

On August 31, this Court overruled Dixon's third motion and ordered that Dixon file the record by September 12. On September 1, Dixon filed a late response to Lazy W's objection, in which she described experiencing repeated daily telephone calls and "venom and hatefulness" from Lazy W's counsel. In response, Lazy W's counsel labeled Dixon's allegations as "fiction." On September 12, Dixon filed a fourth motion seeking an extension to September 15. When no record was filed by September 15, this Court overruled Dixon's fourth motion on September 19 and notified Dixon that the matter had been referred to the Court for further action. On September 22, this Court issued an Order to Appear and Show Cause to Dixon.

On October 24, we held a hearing on our Order to Appear and Show Cause, at which Dixon appeared in person and with her counsel, Mr. Jeff Coe. This Court found Dixon in contempt for violating our August 31 order and ordered Dixon be arrested and confined to the Smith County Jail for such violation until she purged herself of the contempt by preparing and filing the complete reporter's record in legible form as required by the Texas Supreme Court. This Court's commitment order required that Dixon file volumes two and four by noon on October 25 and gave Dixon until 1:00 p.m. on October 31 to file the complete record. We ordered that Dixon report to the Smith County Jail each day, excluding Saturdays and Sundays, with all equipment necessary to complete the record, and work on the record from 8:00 a.m. until 5:00 p.m. until the record is complete. We explained that the record would be deemed complete when presented in legible format, and accepted and filed by the Clerk of this Court, and that "[a]fter the complete record is presented in legible format, Reporter Dixon shall continue to

report to the Smith County Jail until she receives notification from the Court that the record has been accepted and filed."

Dixon untimely filed volume two of the record on October 25 at 1:43 p.m. and untimely filed volume four on October 27 at 4:02 p.m. On November 2, Mr. Coe filed a letter with this Court, in which he explained that other court reporters were assisting Dixon with preparation of the record and completed the deposition testimony for volume three. But he further explained that one of the assisting reporters discovered that "the content of the live testimony is … as if a two year old was typing on the machine. It is unintelligible." Accordingly, this Court determined that Dixon would be unable to complete the record and we ordered her released from confinement in the Smith County Jail.

On November 2, this Court remanded the case to the trial court to conduct a hearing in accordance with Texas Rule of Appellate Procedure 34.6(e)(2) and make written findings of fact as to whether a portion of the record has been lost or destroyed. We ordered the trial court to determine whether (1) without Lazy W's fault, a significant portion of the record has been lost or destroyed and, if so, whether the missing portion of the record is necessary to the appeal's resolution, (2) the missing portion of the record can be replaced by stipulation or agreement of the parties, and (3) Lazy W is entitled to a new trial under Rule 34.6(f). After conducting a hearing on November 16, the trial court made numerous findings and determined that Lazy W is entitled to a new trial. Pursuant to our request, the parties filed letter briefs addressing whether Lazy W is entitled to a new trial.

**ENTITLEMENT TO NEW TRIAL**

In its letter brief, Lazy W asserts entitlement to a new trial, as found by the trial court.

### Standard of Review and Applicable Law

When the reporter's record is lost or destroyed, an appellant is entitled to a new trial under the following circumstances:

> (1) if the appellant has timely requested a reporter's record;
> (2) if, without the appellant's fault, a significant exhibit or a significant portion of the court reporter's notes and records has been lost or destroyed or--if the proceedings were electronically recorded--a significant portion of the recording has been lost or destroyed or is inaudible;
> (3) if the lost, destroyed, or inaudible portion of the reporter's record, or the lost or destroyed exhibit, is necessary to the appeal's resolution; and
> (4) if the lost, destroyed or inaudible portion of the reporter's record cannot be replaced by agreement of the parties, or the lost or destroyed exhibit cannot be replaced either by agreement of

the parties or with a copy determined by the trial court to accurately duplicate with reasonable certainty the original exhibit.

TEX. R. APP. P. 34.6(f). We review a trial court's findings under Rule 34.6(f), including a finding that a missing portion of the record is necessary to the appeal, for an abuse of discretion. ***In Interest of S.V.***, 599 S.W.3d 25, 32 (Tex. App.—Dallas 2017, pet. denied). A trial court abuses its discretion when it acts without reference to any guiding rules or principles. ***Id***. at 32-33.

**Analysis**

No one disputes that Lazy W timely requested the record or that any portion of the record was lost or destroyed without Lazy W's fault. Rather, the parties dispute whether the lost or destroyed portion of the record is significant, necessary to the appeal's resolution, and capable of replacement by the parties' agreement.

*Significance Portions of the Record are Lost or Destroyed*

Dixon filed only volumes 2 and 4 of the record and could not produce volume 3. Volume 2 reflects approximately twelve "discussions off the record" entries, five "discussion" entries, one "discussion at the bench" entry, and thirty-nine "inaudible" entries throughout the proceedings. Volume 4 contains three "discussion at the bench" entries and one "inaudible" entry. There are numerous other mistakes in volume 2, including the following statements that appear nonsensical:[2]

> [The trial court to attorneys outside presence of jury panel]: This is a civil case, it is the logic it is not a criminal case. This is obviously from the Rule.
> …
> Mr. Thigpen [Lazy W's counsel to trial court before voir dire]: Because he's an individual. I would never him of course other than just pronounce his name.
> …
> Mr. Thigpen [to trial court before voir dire]: That brings up a new question, Your Honor. In reading your Motion in Limine, I didn't see - I know you'll want to see a ward of the Court.
> …
> Mr. Thigpen [during voir dire]: Would you follow the instructions of Judge Kennedy or the jury cards where the it whether the proper taking of the evaluation (inaudible.)
> …
> Mr. Thigpen [during opening statements]: I loved Mass (sic). I play that all the time. I mean I like to look at – I'm a huge rocking expert - I don't find heavy - I love watching - I love looking at everything Everest on Mass. Green grass. Yeah. I have not valued and have not – didn't have a special value on this.

---

[2] In its brief to the trial court, Lazy W identifies approximately eighteen such mistakes in volume 2.

In its brief to the trial court, to which Lazy W refers this Court, Lazy W also identified questionable testimonial exchanges. The following exchange occurred during Jones's testimony in volume 2:

Q: You took the evidence that you've shown the ladies and gentlemen of the jury about confrontation, about it being bad and your wife was upset about it?
A: I had the evidence, yes, sir.
Q: And that's why we're here to try to determine that.
A: Yes, sir.
Q: To try to answer that argument.
A: I don't think we can put it to rest here today, no.
Q: You mean does my client own that property or does your client own it?
A Yes.
Q: You mean your client and the Lazy W Condemnation District?
A: I don't believe I've seen any wildlife from that part of the Lazy W Ranch, so the answer would be no.
Q: You'd agree with me --
MR. BEARD: Objection.
THE COURT: Sustained.
Q: (By Mr. Thigpen) Talk about -- of the lawsuit that is pending?
A: Nope. They do not.
Q: Then one involving the Home Ownership Association, right?
A: P.O.A? They do not.
Q: Yes.
Q: You have to appreciate Mr. Bennett for what he's done in that line of work.
A: No, I believe the answer to that is no.
Q: But you would agree regarding his work?
A: Yes, sir.
Q: But the P.O.A. has done a lot of work?
A: P.O.A. didn't bring the lawsuit.
Q: And the P.O.A. is the association who was involved and not Mr. Bennett?
A: No, he was involved in every Board item involving the land.

And the following exchanges occurred during Wheeler's testimony in volume 4:

Q: And to say that the property - that even the way the way the land here on this piece of property was situated, was that one of the valuable things you were looking for?
A: It was one factor in the decision to acquire this acreage.
Q: And the procedure from even the base of the property was the creek, so it was the best piece of property to have.
A: And was enough with the lake issue, but they all said it would be the best buy for their animals.
…
Q: It is my understanding and I am just the attorney, in that situation it's like the (inaudible.)
MR. BEARD: Other than hearsay about the rates, we would object to what he just said.
THE COURT: The objection is sustained.
Go ahead.
…
Q: And they would never - sorry. They would never allow an additional road, correct?
A: Correct.

5

Q And that also would you agree with me -- that the condemnation that is bound to your property does -- is there at least the property that you have attached to the Lazy W, correct?
A: Correct.
Q: Now, does it lead with the district to --
A: Not in 25 years
MR. BEARD: Objection. He answered the question.
THE COURT: Overruled.
…
Q: Okay. And you would project when it would all be completed?
A: Correct. No, I mean if he even thought it would scare the people, I don't -- and I know every type of people would be coming.
Q: Yes, you know every type of person would want to come and see the animals and walk around.
A: Yes, they would.
Q: He wouldn't board the animals. I don't think he can do that.
A: He would board the animals if they were sick.
Q: And what about a meeting, an open meeting?
A: I imagine it would be set in the day time. We would have to move in and get everything set up beforehand.
…
Q: If the jury found the property taken was fraudulently taken?
A: I'm not aware that it was.
Q: Would you ever have dealings with any of that?
A: No, not even at the minimum.
Q: How would you preserve the wildlife? How would you take care of them?
A: What I do every day. We would do what we have to do. Mr. Bennett made the difference.

At the beginning of the November 16 hearing, the trial court asked if there was an agreement that a significant portion of the reporter's notes and records has been lost or destroyed. Jones's counsel responded:

I would agree that it appears that way, but I thought today's hearing was to finally make that determination, and I would also add that that's a separate question from whether that -- if a portion is lost or destroyed, it's necessary for the appeal going forward. Just want to make that clarification.

Lazy W's counsel posited that the record was lost or destroyed due to the lack of volume 3 and the errors, problems, and gaps in volumes 2 and 4. The trial court made the following comments regarding the contents of volumes 2 and 4:

…And I will say with regard to volumes 2 and 4, I frankly don't know how you could prosecute the appeal from those volumes in the form that they are. Things that I know what I said, because I know I was reading the opening part of voir dire from the instructions provided in the Rules of Civil Procedure, are almost unrecognizable. None of the argument or ruling on objections is in the record, because it just said discussion had at the bench or something about -- like that.… It just says bench conference off record, so none of the rulings to any of the evidence that was offered is there. None of the -- I mean, there was just a statement that said Court reads instructions to the panel. I doubt – I don't recall there's any kind of dispute about a juror violating the instructions that the Court gave the panel, but it just said Court reads instructions to the jury. At

6

the bench conferences, there's no rulings in the record. This Court has bench conferences during a jury trial to hear objections, because I prefer not to have speaking objections … So anyway, I always have those sort of objections heard at the bench for that reason, and those conferences are not on the record, and the rulings are not on the record. So, I don't know how you would know what the ruling was to complain of.

   I couldn't tell if part of Mr. Wheeler's testimony was missing, but in part 4 -- in volume 4, I can't even tell what's going on. There are continuous references to a Cummings, which I assume is Mr. Cummings that sold the property to Mr. Jones, but in context, it cannot be Mr. Cummings, it has to be somebody else. And I don't know, maybe Mr. Bennett. It seemed like it could have been Mr. Bennett. But if this was the best that could be produced from the part of the record that is there, I don't think that it would be usable. I don't think, even if we found volume 3, I don't know that it would be usable enough to produce a record, because volume 2 and 4 are, in my opinion, not sufficient to prosecute an appeal from.

As to whether the record can be recreated, Dixon testified that there was nothing else from which testimony could be transcribed by her or another reporter.[3]  She acknowledged a willingness to do everything within her power to ensure that no stone was left unturned with respect to any data from which a record could be transcribed, but also acknowledged having already done so.  The trial court questioned Dixon as follows:

> Trial Court: Ms. Dixon, do you believe that either you, or people assisting you, or the technician, or people assisting the technician, or cleaning the machine, that every person involved has done everything that they can do to produce the portion of the record that we don't have?
> Dixon: Yes, ma'am.
> Trial Court: No further efforts would be fruitful, in your opinion, to find this missing portion of the record?
> Dixon: I can try again.
> Trial Court: Well, if you've done it, what could you do now that you didn't do before?
> Dixon: Nothing.

The trial court noted that other court reporters assisted Dixon, including Melanie Forbes, an official court reporter.  The trial court stated, "I don't have any reason to believe that she [Forbes] wouldn't have been able to produce the records if the materials were there."

In its written findings, the trial court found that volume 2's errors constitute more than "misspellings or typographical errors."  For instance, the trial court noted that it considered challenges for cause at the bench, but volume 2 identifies these exchanges as "inaudible" or "off the record," making it impossible to appeal from a ruling on a challenge due to both inaccuracies and missing parts of the record.  And during Jones's testimony, the reporter identified objections

---

[3] During direct examination by Jones's counsel, Dixon appeared to testify that her machine creates written notes that she could not locate, but on cross-examination, she testified that her notes are electronic.  The trial court's findings reflect that Dixon "seemed confused about whether her machine had produced the traditional paper notes or whether it had only written to an SD card."

as "bench conference" rather than reporting the substance of the objection, argument, and ruling. The court noted that volume 2 is "riddled with numerous statements that just make no sense at all." Regarding volume 4, the court explained that there are instances when a witness is reported to be testifying about one person but from the context of other testimony, he is not testifying about that person. According to the trial court, "it is too unclear from the record to be able to rely on it." The trial court found the errors in volumes 2 and 4 to be "so egregious as to make [them] unusable as an accurate record of the proceedings." Thus, the trial court determined that volumes 2 and 4 have been "lost or destroyed in that the best possible transcription of Dixon's notes is unusable and unreliable" for purposes of appeal. The trial court likewise found that volume 3 has been lost or destroyed. Specifically, although part of volume 3 consisted of deposition testimony, the court made rulings on objections, which have not and cannot be produced by Dixon, and the portions of live testimony have been lost or destroyed.

Accordingly, the trial court's findings and the record indicate that (1) volumes 2 and 4 contain various nonsensical statements, (2) the content of objections and rulings has been omitted from volumes 2 and 4, (3) volume 3 contained not only deposition testimony, but live testimony that has been lost, (4) the content of objections and rulings from volume 3 has been lost, and (5) Dixon and other reporters attempted, without success, to recreate the complete record. Importantly, Lazy W cannot reasonably be expected to show the exact substance of missing testimony. *See **Coplin v. Mann***, 622 S.W.3d 586, 590-91 (Tex. App—Texarkana 2021, no pet.) (portion of plaintiff's testimony was lost; appellant could not reasonably be expected to exactly show how much was missing or precise nature of missing testimony); *see also **Gavrel v. Rodriguez***, 225 S.W.3d 758, 762 (Tex. App.—Houston [14th Dist.] 2007, pet. denied) (disjointed nature of recorded testimony, coupled with reporter's admission that her notes were incomplete, led to inevitable conclusion that portions of record are missing; appellant could not reasonably be expected to show exactly what testimony is missing). Given the omissions in volumes 2 and 4 and the absence of volume 3, the trial court did not abuse its discretion by finding that a significant portion of the record has been lost or destroyed.

*Inspection of SD Card*

Jones asserts that this Court should order an inspection of Dixon's steno machine SD card to determine whether volume 3 can be recovered. At the November 16 hearing, Dixon testified that she sent the SD card to a technician and Top Cat Steno later returned the card, but Dixon

testified that the technician assumed the SD card was hers and she did not know if the card belonged to her. She acknowledged that the card may or may not have notes of the transcription from the case. She later explained, "I called the technician, who refused to send anything pertaining to my case here, because he said he didn't -- they didn't want to get involved." When asked whether anything that occurred before this Court or any attempts to create the record would have been without benefit of the SD card's contents, Dixon responded, "It's hard to say. I would assume so." The trial court subsequently questioned Dixon as follows:

> Trial Court: Did you -- you had two SD cards?
> Dixon: Yes, ma'am.
> Trial Court: All right. When you were scoping, do you know if you were scoping from SD card one or SD card two?
> Dixon: Usually, the backup card is written over when it gets full, and the data card is the one that has the information on it.
> Trial Court: And SD card one is what you were looking at to --
> Dixon: Yes, ma'am.
> Trial Court: -- to scope it and try to produce the record?
> Dixon: Yes, ma'am.
> Trial Court: All right. And for whatever reason, a portion of the transcript was missing from SD card one?
> Dixon: After I hit the combination of keys, yes, ma'am.
> Trial Court: All right. And what SD card did you send to this place? I can't think of what you called it.
> Dixon: I sent both of them.
> Trial Court: Okay.
> Dixon: Because the technician requested I send both of them, to make sure that it was still on there, and it wasn't.
> Trial Court: Okay. It wasn't on either card?
> Dixon: No, ma'am.
> Trial Court: And when they returned cards to you yesterday, did you get SD one, SD two, or both of them?
> Dixon: I have no idea, ma'am.
> Trial Court: Oh, you haven't even opened up the case?
> Dixon: I opened it up to see if I had the SD card, which I did, and I -- the technician said usually they mark them which is which, but they didn't.
> Trial Court: So did you get back one SD card or two?
> Dixon: Yes, ma'am, one card.
> Trial Court: Okay. And you don't know where the backup SD two is?
> Dixon: No, ma'am, I do not.
> Trial Court: And the technician did not return it to you?
> Dixon: No, he didn't -- he did not.
> Trial Court: All right.
> Dixon: All they did was clean my machine and check it to make sure it was okay

As previously discussed, Dixon ultimately admitted that nothing could be done that she had not already tried, a fact further supported by Forbes's failed attempt at recreating the record.

In its findings, the trial court noted that Dixon did not know what was on the card or whether it was the correct card and her testimony seemed to indicate that paper notes were never produced and the digital record from the SD card is missing. The court stated that Jones urged the trial court to send the SD card to a designated court reporter to see if the trial is on the card and can be recovered. The trial court declined to do so because Dixon's testimony suggested that doing so would not be useful and the court had no "evidence that any notes contained on the SD card would be any clearer than those relating to volumes 2 and 4, which this Court has found unusable and unreliable."

In addition to Dixon's testimony, the trial court had the benefit of this Court's order of release of contemnor. In that order, we noted that Dixon's counsel informed this Court that a reporter assisting Dixon in preparation of volume 3 discovered that "the content of the live testimony is … as if a two year old was typing on the machine. It is unintelligible." Lazy W attached the letter from Dixon's counsel to its brief to the trial court and called the trial court's attention to the letter. In its findings, the trial court took judicial notice of the pleadings, as well as the proceedings before this Court and the order for release of contemnor. As the trial court noted at the November 16 hearing, there is no reason to believe that Forbes could not have transcribed the live testimony if the materials were available for doing so. Given that another official reporter already unsuccessfully attempted to transcribe the live portion of volume 3, we cannot say that the trial court abused its discretion by concluding that a review of the SD card would be unavailing.

*Agreement of the Parties*

We next address Jones's argument that the defects in volumes 2 and 4 constitute mere inaccuracies, which should be corrected by agreement of the parties or by the trial court. Jones maintains that the trial court has not held a hearing on inaccuracies or attempted the corrections required by Rule 34.6(e) and the parties have had no opportunity to attempt any agreement on inaccuracies, making a new trial improper.

Parties may agree to correct an inaccuracy in the reporter's record, including an exhibit, without the reporter's recertification. TEX. R. APP. P. 34.6(e)(1). "By written stipulation filed with the trial court clerk, the parties may agree on the contents of the appellate record." TEX. R. APP. P. 34.2. "An agreed record will be presumed to contain all evidence and filings relevant to the appeal." *Id*. "If the parties cannot agree on whether or how to correct the reporter's record so

that the text accurately discloses what occurred in the trial court and the exhibits are accurate, the trial court must--after notice and hearing--settle the dispute." TEX. R. APP. P. 34.6(e)(2). "If the court finds any inaccuracy, it must order the court reporter to conform the reporter's record (including text and any exhibits) to what occurred in the trial court, and to file certified corrections in the appellate court." *Id*.

This Court's November 2 order specifically instructed the trial court to determine whether any missing portions of the record could be replaced by stipulation or agreement. At the beginning of the November 16 hearing, Lazy W's counsel gave an opening statement, in which he informed the trial court that he did not believe the missing portion of the record could be replaced by agreement. Jones's counsel did not object to this representation. In its findings, the trial court determined that the volumes could not be replaced by agreement of the parties.

The trial occurred March 21 through 23 of 2022; thus, nearly ten months has passed. The trial court's and parties' memories regarding the testimony, objections, rulings, argument, et cetera that occurred during the proceedings has likely waned. Although the parties may be able to make corrections to some portions of volumes 2 and 4, the substance of objections and rulings the trial court identified as missing from volumes 2 and 4 are gone, volume 3's live testimony from Wickliffe and Wheeler is gone, and the substance of any objections and rulings from volume 3 are gone. Dixon testified there were no materials from which she or another reporter could transcribe the testimony from trial. And aside from the deposition testimony from volume 3, other reporters were unable to transcribe the missing portions of the record. Again, Lazy W cannot reasonably be expected to show the exact substance of missing portions of the record, nor can Jones or the trial court. *See Coplin*, 622 S.W.3d at 590-91; *see also Gavrel*, 225 S.W.3d at 762. Under these circumstances, the trial court could reasonably conclude that the missing record could not be replaced by agreement and did not abuse its discretion in so concluding. *See Coplin*, 622 S.W.3d at 591 (lost portion of record could not be replaced by agreement; trial occurred over thirteen months prior and no means existed to accurately and precisely recreate missing testimony).

### *Necessary to Appeal's Resolution*

In its letter brief to this Court, Lazy W states its intention to raise a sufficiency challenge. But Jones maintains that the existing record is sufficient to defeat a sufficiency challenge, rendering the missing material unnecessary. With respect to factual sufficiency, Jones also

asserts Lazy W waived the issue by failing to file a motion for new trial. Moreover, Jones contends that the equities support denial of relief because Lazy W failed to establish that missing portions of the record are necessary to the appeal's resolution. Alternatively, he requests that we carry the Rule 34.6 issue and allow the parties to brief the issue along with the merits.

A point in a motion for new trial is a prerequisite to asserting a complaint of factual insufficiency of the evidence to support a jury finding. TEX. R. CIV. P. 324(b)(2). Because Lazy W did not file a motion for new trial to challenge the factual sufficiency of the evidence, it has waived the issue of factual insufficiency. *See id*.; *see also* **Lowry v. Tarbox**, 537 S.W.3d 599, 608 (Tex. App.—San Antonio 2017, pet. denied) ("Following a jury trial, a complaint (1) that the evidence was not factually sufficient to support a jury's finding or (2) that a jury's finding was against the great weight and preponderance of the evidence must be raised in a motion for new trial or it is waived"). However, Lazy W did file a motion for judgment notwithstanding the verdict, in which it urged the trial court not to render judgment on the jury's findings that Lazy W's decision to take Jones's property was made in bad faith or fraudulent.[4] A motion for judgment notwithstanding the verdict is sufficient to preserve a legal sufficiency complaint. *See* **Musallam v. Ali**, 560 S.W.3d 636, 639 (Tex. 2018); *see also* **Lowry**, 537 S.W.3d at 609.

But reaching a conclusion that "an appellant bringing a sufficiency challenge in a civil case is entitled to a new trial solely because any portion of the record is missing would eviscerate the appellate rule 34.6(f) requirements that the missing portion be significant and be essential to the resolution of the appeal." **Interest of S.V.**, 599 S.W.3d at 34. Whether a lost or destroyed record is necessary to an appeal's resolution constitutes a harm analysis. *See* **Coplin**, 622 S.W.3d at 591. "If the missing portion of the record is not necessary to the appeal's resolution, then the loss of that portion of the record is harmless under the rule and a new trial is not required." **Gavrel**, 225 S.W.3d at 761. "The 'appeal's resolution' encompasses both affirmance and reversal of the trial court's judgment." **Id.** at 763.

Even assuming that volumes 2 and 4 are not so full of errors as to render the entirety of the testimony unusable, the fact remains that volume 3 has not been filed and, aside from the deposition testimony, cannot be recreated. "[W]hen an appellant complains of the factual *or legal sufficiency* of the evidence, the appellant's burden to show that the judgment is erroneous

---

[4] The motion is incorrectly titled as a "response," but the body of the motion and the responses thereto reflect that it is a motion and not a response.

cannot be discharged in the absence of a complete or an agreed statement of facts." ***Schafer v. Conner***, 813 S.W.2d 154, 155 (Tex. 1991) (per curiam) (emphasis added). Here, we have neither a complete record nor an agreed statement of facts. The trial court determined that the record cannot be recreated by agreement, and we have upheld that conclusion. Nor is this a case wherein the existing record sufficiently informs us as to the contents of the missing portions of the record. *See **Interest of S.V.***, 599 S.W.3d at 34 (new trial not required where record contained testimony sufficient to inform appellate court as to content of missing video and photograph exhibits; thus, record was adequate without exhibits to analyze legal and factual sufficiency). Absent a complete record, we cannot "review all the evidence presented to the jury or [] apply the appropriate evidentiary sufficiency standard of review." ***Gavrel***, 225 S.W.3d at 763. Under the circumstances of this case, we decline to conduct a sufficiency review or proceed with the merits of the case based on the incomplete record before us.

Lazy W further represents that, absent a complete record, it cannot identify other potential errors that it may wish to appeal. In its findings, the trial court noted that (1) it considered challenges for cause at the bench, but volume 2 identifies these exchanges as "inaudible" or "off the record," making it impossible to appeal from a ruling on a challenge, (2) during Jones's testimony in volume 2, the reporter identified objections as "bench conference" rather than reporting the substance of the objection, argument, and ruling, making it impossible to appeal the admission or exclusion of evidence, (3) Dixon has been unable to produce any record for volume 3, (4) the trial court made rulings on objections that would have been included in volume 3, but those rulings have not been and cannot be produced, and (5) Lazy W's counsel cannot determine what other issues might be meritorious because he has been unable to review the record for errors.

An appellant's suggestion that the destroyed portion of the reporter's record could potentially assist appellant on appeal, without more, does not render the missing portions of the record necessary to the appeal's resolution. ***In Interest of J.G.***, 587 S.W.3d 25, 28 (Tex. App.—Tyler 2018, no pet.). In ***J.G.***, the court reporter filed the master index, the record for the three days of trial, and the exhibit volume, but failed to provide the records for seven pretrial hearings. *See **id**.* at 27. We held, "Because the temporary orders and complaints about temporary permanency hearings are superseded and rendered moot by a final termination judgment, the

reporter's record of the lost preliminary hearings, including [three specific hearings] are not necessary to the appeal's resolution." *Id*. at 31.

Here, we have more than mere speculation from Lazy W. The trial court found that Lazy W made numerous objections during the trial that were not recorded in the official record. The trial court's finding that the appeal of its evidentiary rulings is affected by the state of the record is something more that mere speculation from Lazy W.

We conclude that the trial court did not abuse its discretion by finding that the missing record is necessary to the appeal's resolution. *See Coplin*, 622 S.W.3d at 591 (missing record necessary to appeal's resolution where appellant desired to raise sufficiency challenge); *see also McAllen v. Trigo*, No. 13-04-00344-CV, 2006 WL 3627718, at *3 (Tex. App.—Corpus Christi Dec. 14, 2006, pet. denied) (remanding for new trial where City raised legal and factual sufficiency challenges and appellate court could not perform required sufficiency review in light of incomplete record).

*Conclusion*

As the trial court's findings reflect, all four of Rule 34.6(f)'s criteria have been met: (1) Lazy W timely requested the record, (2) a significant portion of the record is lost through no fault of Lazy W, (3) the missing portions of testimony are necessary to the appeal's resolution, and (4) the lost volumes cannot be replaced by agreement of the parties or otherwise. Thus, the trial court did not abuse its discretion by concluding that Lazy W is entitled to a new trial.

### DISPOSITION

Because Lazy W is entitled to a new trial under appellate Rule 34.6(f), we **reverse** the judgment and **remand** the case for a new trial.

**BRIAN HOYLE**
Justice

Opinion delivered January 19, 2023.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**JANUARY 19, 2023**

**NO. 12-22-00168-CV**

**LAZY W CONSERVATION DISTRICT,**
Appellant
V.
**ARLIS A. JONES,**
Appellee

Appeal from the 3rd District Court

of Henderson County, Texas (Tr.Ct.No. CV19-0565-173)

THIS CAUSE came to be heard on the appellate record and letter briefs filed herein, and the same being considered, because it is the opinion of this Court that a significant portion of the record is lost, it is ORDERED, ADJUDGED and DECREED by this Court that the judgment be **reversed** and the cause **remanded** to the trial court **for a new trial** in accordance with the opinion of this Court; and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J. and Neeley, J.*